RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GLORIS SARAI VASQUEZ-RIVERA,

                                   *Petitioner,*

    *v.*

MERRICK B. GARLAND, Attorney General,

                                   *Respondent.*

No. 21-3344

─────────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 206 806 492.

Decided and Filed:  March 15, 2024

Before:  GRIFFIN, BUSH, and READLER, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ON BRIEF:**  Paul Grotas, THE GROTAS FIRM, P.C., New York, New York, for Petitioner.
Victor M. Lawrence, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.

─────────────────

**OPINION**

─────────────────

CHAD A. READLER, Circuit Judge.  The Board of Immigration Appeals dismissed
Gloris Sarai Vasquez-Rivera's appeal from the denial of her application for asylum, withholding
of removal, and protection under the Convention Against Torture.  She now seeks review of that
order, alleging that she faces a threat of violence and persecution if she returns to El Salvador.
We grant in part and deny in part the petition for review.

**I.**

Vasquez-Rivera, a native and citizen of El Salvador, entered the United States in June 2014, when she was nine years old. Her entry was not authorized by the United States. So the Department of Homeland Security served Vasquez-Rivera with a notice to appear in removal proceedings and charged her as a noncitizen present in the United States without being admitted or paroled after inspection by an immigration officer. *See* 8 U.S.C. § 1182(a)(6)(A)(i). She was released to her parents, who had been living in Ohio.

Vasquez-Rivera appeared before an immigration judge (IJ). Through counsel, she admitted the allegations set forth in the notice to appear and conceded removability as charged. Vasquez-Rivera applied for asylum and withholding of removal as well as for Convention Against Torture protection.

A hearing was held to consider her application. Both Vasquez-Rivera, then 13 years old, and her mother, Rosa Rivera-Menjivar, appeared as witnesses. According to their testimony, Vasquez-Rivera came to the United States because of her fear of gang violence in El Salvador.

Vasquez-Rivera had been living in El Salvador with her maternal aunt, Raquel, Raquel's husband, Roberto, and Vasquez-Rivera's maternal uncle, Cristian. The bus service to Vasquez-Rivera and Cristian's school was suspended when gang members threatened the bus driver and demanded money from him. And when Vasquez-Rivera and Cristian instead walked to school, gang members harassed Cristian and threatened to harm his family if he did not join the gang. Raquel and Roberto became afraid that something would happen to Vasquez-Rivera and Cristian, fearing that gang members would rape Vasquez-Rivera. These fears were not unfounded—Vasquez-Rivera and Rivera-Menjivar also testified about other gang-related incidents involving their extended family: gang members shot and killed Rivera-Menjivar's uncle in 2006, demanded money from Rivera-Menjivar's aunt and fired shots at her house in 2006, demanded money from Rivera-Menjivar's mother in 2007, and raped Rivera-Menjivar's aunt and cousin in 2008. Ultimately, Vasquez-Rivera and Cristian stopped attending school and left El Salvador for the United States.

After the hearing, the IJ denied Vasquez-Rivera's application and ordered her removal to El Salvador. Starting with Vasquez-Rivera's request for asylum, the IJ described Vasquez-Rivera's proposed social groups as: (1) Salvadoran women and girls whose parents live outside the country; (2) her family; (3) family members of persons targeted for gang recruitment whose family is threatened when they refuse to join the gangs; and (4) young Salvadoran women considered to be property of the gangs. The IJ found that Vasquez-Rivera and her mother were credible witnesses and that Vasquez-Rivera had provided corroboration in support of her claims. But none of Vasquez-Rivera's particular social groups, the IJ found, were cognizable for purposes of federal immigration law.

That left her request for withholding of removal and for protection under the Convention Against Torture (CAT). Because Vasquez-Rivera had failed to establish eligibility for asylum, the IJ held that she also failed to satisfy the burden for withholding of removal. As for Vasquez-Rivera's request for CAT protection, the IJ determined that she had failed to show that she would more likely than not face harm rising to the level of torture in El Salvador or that the Salvadoran government would be willfully blind to any problems that she might have.

Vasquez-Rivera appealed to the BIA. The BIA affirmed the IJ's determination that Vasquez-Rivera failed to establish that three of her four proposed particular social groups were "distinct" in El Salvador, meaning her membership in those groups could not form the basis of her claims for asylum and withholding of removal. As for the remaining particular social group, Vasquez-Rivera's family, the BIA affirmed on different grounds. Assuming that Vasquez-Rivera's family constituted a distinct social group, the BIA agreed with the IJ's purported "determination that [Vasquez-Rivera] did not establish a nexus between this group and the harm she experienced and fears." Finally, the BIA affirmed the IJ's determination that Vasquez-Rivera had failed to demonstrate eligibility for CAT protection. With that, the BIA dismissed Vasquez-Rivera's appeal. This timely petition for review followed.

## II.

We review the BIA's decision as the final agency determination. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To the extent the Board adopted the IJ's reasoning, we

necessarily review the IJ's decision as well. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015). We review legal conclusions de novo. *See Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021). And we review factual findings for substantial evidence, *id.*, meaning "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

*Asylum and Withholding of Removal.* To be eligible for asylum, Vasquez-Rivera must show that she meets the definition of a "refugee." *See* 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(B)(i); *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). That requires her to prove that she is "unable or unwilling" to return to El Salvador because of past persecution or "a well-founded fear of persecution on account of" a protected group, which includes membership in a particular social group. 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); *see Zometa-Orellana*, 19 F.4th at 976. To make that showing, Vasquez-Rivera must demonstrate that: (1) her treatment in El Salvador constitutes past persecution or that she has a well-founded fear of future persecution; (2) there was a connection between her persecution and her membership in a particular social group (the "nexus" requirement); and (3) the persecution was committed by the government, or by non-government actors whom the government was unable or unwilling to control. *Id.*; *see Gonzalez Ortiz v. Garland*, 6 F.4th 685, 688 (6th Cir. 2021).

Removal has different elements. To qualify for withholding of removal, Vasquez-Rivera must show that, if removed to El Salvador, her "life or freedom would be threatened [there] because of" a protected ground. 8 U.S.C. § 1231(b)(3)(A); *see Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). The Supreme Court has long recognized that protection from removal requires a more "stringent" showing of persecution than what is required for asylum. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 443–44 (1987); 2 Litigation of International Disputes in U.S. Courts § 10:24. Demonstrating eligibility for asylum requires the noncitizen to show past persecution or a "well-founded fear of persecution." 8 U.S.C. § 1101(a)(42). A "well-founded fear" of persecution can exist even "when there is less than a 50% chance of the occurrence taking place." *Cardoza-Fonseca*, 480 U.S. at 431. For withholding of removal, by contrast, the noncitizen must demonstrate an objective, "clear probability of persecution" in the proposed country of removal. *INS v. Stevic*, 467 U.S. 407, 430 (1984). We have interpreted

"clear probability" to mean that persecution is more likely than not. *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 851 (6th Cir. 2023). Withholding claims thus fail when applicants cannot show a well-founded fear of persecution under the more forgiving asylum standard. *See Andret v. Garland*, No. 23-3426, 2024 WL 167115, at *6 (6th Cir. Jan. 16, 2024) (citing *Dieng v. Holder*, 698 F.3d 866, 871 (6th Cir. 2012)).

Vasquez-Rivera based her claims for asylum and withholding of removal on her membership in four particular social groups. A cognizable social group has three elements: (1) members must share an immutable characteristic; (2) the group must have discrete and definable boundaries; and (3) society must actually perceive the purported group as a distinct class of persons. *Cruz-Guzman v. Barr*, 920 F.3d 1033, 1036 (6th Cir. 2019). Whether a proposed particular social group is cognizable is a legal determination, where "decisions as to the underlying elements are factual determinations subject to the substantial evidence standard." *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023) (citation omitted).

We agree with both the BIA and the IJ's conclusion that Vasquez-Rivera failed to identify sufficient evidence in the record establishing that three of these groups (all proposed groups except her family) are perceived as distinct social groups in El Salvador. A cognizable social group "must share a narrowing characteristic other than their risk of being persecuted." *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011). Yet each of Vasquez-Rivera's proposed groups is replete with generalities rather than specifics. Case in point, the record as to country conditions shows merely that women and children in El Salvador generally suffer from criminality and mistreatment, including rape and child exploitation, offenses the Salvadoran government does not effectively prosecute. To the same end, the record does not establish that Salvadoran society "actually perceives" Vasquez-Rivera's proposed social groups "as a distinct class of persons." *Cruz-Guzman*, 920 F.3d at 1036. Groups like those proffered by Vasquez-Rivera lack the specificity necessary to qualify as a particular social group. *See, e.g.*, *Perez v. Garland*, No. 20-4172, 2021 WL 4988351, at *3 (6th Cir. Oct. 27, 2021) (finding "young Guatemalan men between the ages of 15 and 25 who have opposed gang activity and lack protection" was a group "too vague and broad to meet the requirements of a particular social group").

Vasquez-Rivera responds that the country-conditions evidence "establishes . . . the existence of special laws set out to protect [a] vulnerable group," mistreated women. But the BIA found that the existence of laws to protect certain groups of people does not show that these groups are "set apart, or distinct, from other persons within the society in some significant way." That those laws serve an important purpose, in other words, does not also demonstrate the existence of particular social groups.

Vasquez-Rivera also faults the BIA's social-distinction analysis as cursory. But the BIA "need not write an exegesis on every contention." *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 319 (6th Cir. 2018) (quoting *Trujillo Diaz v. Sessions*, 880 F.3d 244, 255 (6th Cir. 2018)). What it must do is "consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (citation omitted). Here, the BIA did so—it reviewed the IJ's analysis of three of Vasquez-Rivera's proposed social groups, cited precedent on the social-distinction issue, and held that Vasquez-Rivera failed to identify sufficient record evidence establishing that those groups were perceived as socially distinct in El Salvador. So long as we are satisfied that the BIA's "grounds for decision are clear," and we can engage in "meaningful judicial review under our usual substantial-evidence test," there is no basis to conclude that the BIA committed a legal error. *Palucho v. Garland*, 49 F.4th 532, 539–40 (6th Cir. 2022).

That leaves Vasquez-Rivera's final proposed social group: her family. Although the IJ also deemed Vasquez-Rivera's family non-cognizable as a distinct social group, the BIA charted a different course. Operating under the assumption that Vasquez-Rivera's family so qualified, the BIA affirmed on a different ground: the IJ's purported determination that Vasquez-Rivera failed to establish a nexus between that group and any harm that she experienced or feared. Typically, "[w]e review a nexus determination—a finding of fact—under the substantial evidence standard." *Turcios-Flores*, 67 F.4th at 357 (citation omitted). At the same time, the BIA is prohibited from "engag[ing] in de novo review of findings of fact determined by an [IJ]." 8 C.F.R. § 1003.1(d)(3)(i); *see Guillory v. Lynch*, 630 F. App'x 556, 564 (6th Cir. 2015). So where the IJ has not made a finding of fact on a disputed matter, and such a finding is necessary

to resolution, the BIA must remand to the IJ to make the required finding; it may not conduct its own fact-finding.  8 C.F.R. § 1003.1(d)(3)(iv).

Here, the BIA attributed analysis to the IJ that the IJ never undertook.  Finding that none of Vasquez-Rivera's proposed social groups were cognizable, the IJ concluded that her asylum claims failed.  With respect to Vasquez-Rivera's family in particular, the IJ found that Vasquez-Rivera "did not establish that her family was or will be identified as a distinct group."  As a result, the IJ never resolved whether Vasquez-Rivera could prove a nexus between her membership in her family and her persecution.  The only reference to the nexus requirement in the IJ's opinion is with respect to a different particular social group—"Salvadoran women and girls whose parents live outside the country."  There, the IJ found that "even if this [were] a cognizable group, there is no nexus" between Vasquez-Rivera's claim and this group.  But the IJ made no similar finding regarding the family-as-a-particular-social-group claim.  So the BIA's conclusions as to the nexus required to prove asylum for this social group lack support in the record and constitute improper de novo factfinding.  *See* 8 C.F.R. § 1003.1(d)(3)(i).

On remand, the BIA may choose from different paths in resolving Vasquez-Rivera's remaining asylum and withholding of removal claims.  It may consider affirming on the basis that, as the IJ concluded, the proposed social group—Vasquez-Rivera's family—is not cognizable.  Separately, turning to nexus, it could consider her claim based on the facts that the IJ found, *see Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam), or, if necessary, remand to the IJ to make additional findings on the nexus element, *see* 8 C.F.R. § 1003.1(d)(3)(iv) (stating that the BIA itself is an appellate body, and can remand to the IJ for "further factfinding"); *Lin v. Garland*, 81 F.4th 629, 639 (6th Cir. 2023) (quoting *Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010)).

That raises the question of what nexus standards the BIA should apply.  The Attorney General or the Secretary of Homeland Security may grant asylum if "the applicant [can] establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."  *See* 8 U.S.C. § 1158(b)(l)(A)–(B)(i).  By comparison, to grant withholding of removal, the Attorney General must determine that the applicant's "life or freedom would be threatened" in the country to

which she would otherwise be removed "because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *See id*. § 1231(b)(3)(A). By their terms, those two statutory nexus standards are not the same ("one central reason" versus "because of"). And between the two, withholding of removal's "because of" standard would appear to be the more daunting one.

A divided panel of this court, however, recently determined otherwise. In *Guzman-Vazquez v. Barr*, we held that applicants for withholding of removal "must demonstrate that a protected ground was at least one reason for their persecution." 959 F.3d 253, 274 (6th Cir. 2020). *But see id.* at 286–90 (Murphy, J., dissenting). In effect, *Guzman-Vazquez* reads "because of" to mean "at least one reason." That conclusion seemingly was inspired by *Barajas-Romero v. Lynch*, a Ninth Circuit decision that turned more on that court's understanding of congressional purpose than it did the statutory language at issue, *see, e.g.*, *id.* at 271–74 (quoting *Barajas-Romero v. Lynch*, 846 F.3d 351 (9th Cir. 2017)). In dissent, Judge Murphy drew upon the law's text as well as precedent to conclude that "the Supreme Court and this Court have repeatedly held that 'because of' adopts at least but-for causation." *Id.* at 276 (Murphy, J., dissenting).

*Guzman-Vazquez* also had the effect of reducing the nexus showing needed to justify withholding of removal below that needed to justify asylum relief. The majority opinion crafted a standard that, in essence, amounts to "at least one reason," a benchmark lower than the asylum "one central reason" requirement. *Id.* at 274 (majority opinion); *see also id.* at 288 (Murphy, J., dissenting). That result is hard to square with the traditional understanding that "asylum requires a lower standard of proof" than does withholding of removal. *See* Law of Asylum in the United States § 2:2 (2023 ed.); *Guzman-Vazquez*, 959 F.3d at 289 (Murphy, J., dissenting); *Cardoza-Fonseca*, 480 U.S. at 443 (explaining that satisfying the stricter withholding standard automatically entitles the applicant to relief, whereas meeting the asylum standard does not).

Others have said the same. In the wake of *Guzman-Vazquez*, Judge Sullivan of the Second Circuit adopted Judge Murphy's reasoning in his concurring opinion in *Quituizaca v. Garland*, 52 F.4th 103, 120 (2d Cir. 2022) (Sullivan, J., concurring) ("And so, 'we are left only with the plain meaning of "because of," which requires a [protected ground] to be a but-for

reason for persecution,' and with the inferences to be drawn from the INA's 'longstanding' statutory structure under which 'mandatory withholding-of-removal relief requires immigrants to meet a standard *higher* than the standard for discretionary asylum relief.'" (citing *Guzman-Vazquez*, 959 F.3d at 289 (Murphy, J., dissenting))).  As more jurists consider the question, Judge Murphy's and Judge Sullivan's shared textual analysis may well carry the day.  Perhaps a future case will present our en banc Court or the Supreme Court with the opportunity to clarify the matter.  As Judge Murphy's dissent first explained, as Judge Sullivan's analysis confirms, and as the volume of cases in this area cements, there is reason to do so.  But for now, we remand to the BIA to apply circuit nexus precedent to Vasquez-Rivera's asylum claim and claim for withholding of removal based on her membership in her family.

Vasquez-Rivera also argues that remand is warranted based on the IJ's and BIA's reliance on *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), which has since been vacated by *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021).  Additional analysis on that point, however, is unnecessary.  The vacated portion of *Matter of A-B-* does not affect the BIA's social-distinction analysis, and we have already determined that remand is warranted with respect to the BIA's nexus analysis.

\*          \*          \*

*CAT Protection.*  The BIA affirmed the IJ's determination that Vasquez-Rivera had failed to establish eligibility for CAT protection.  To so qualify, Vasquez-Rivera must show that she would more likely than not be subjected to torture if removed to El Salvador.  *See Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006) (citing 8 C.F.R. § 1208.16(c)(2)).  Torture, in this context, means "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zaldana Menijar*, 812 F.3d at 501 (cleaned up).

Substantial evidence supports the BIA's conclusion.  While acknowledging the regrettable violence and crime in El Salvador, the BIA found that the record failed to establish that, upon her removal to El Salvador, Vasquez-Rivera would more likely than not be subjected

to torture by, at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity. The BIA pointed out that Salvadoran officials had never subjected Vasquez-Rivera to any harm, nor was there any indication of their specific disinterest in her wellbeing.

Vasquez-Rivera argues that the country-conditions evidence in the record shows that the police force in El Salvador suffers from corruption and criminality, that rape and other sexual crimes against women are widespread in the country, and that the Salvadoran government does not effectively enforce its laws prohibiting corruption and rape. But this general evidence fails to demonstrate that Vasquez-Rivera herself "faces a particularized and likely threat of torture at the hands of a public official, or with the consent or acquiescence of a public official," in El Salvador. *Marqus v. Barr*, 968 F.3d 583, 587 (6th Cir. 2020) (citation omitted).

## III.

For these reasons, we grant in part and deny in part the petition for review, vacate the BIA's decision with respect to Vasquez-Rivera's claims for asylum and withholding of removal based on her membership in her family, and remand for further proceedings.