NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0092n.06

Case No. 24-3290

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 13, 2025
KELLY L. STEPHENS, Clerk

LEONEL BONILLA-CRUZ,

    Petitioner,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: SILER, CLAY, and READLER, Circuit Judges.

**SILER, Circuit Judge.** Leonel Bonilla-Cruz ("Bonilla-Cruz"), a native and citizen of El Salvador, petitions this court for review of the Board of Immigration Appeals ("BIA") and Immigration Judge ("IJ") decisions denying his applications for relief under the Convention Against Torture ("CAT") and for cancellation of removal based on extremely unusual hardship to his U.S.-citizen wife and children. Because the BIA and IJ explained their decisions well enough for us to review them and they pass the applicable deferential standards of review, we deny the petition for review.

**I.**

Bonilla-Cruz entered the United States without inspection in 2012. He settled in Maryland and joined a church, where he met Nincy. The two married in 2019, and they share two young children. Bonilla-Cruz is reportedly a good husband and father, and Nincy relies on his emotional support to help her cope with depression and other mental health conditions.

Nincy and their children are all U.S. citizens. Since his arrival, Bonilla-Cruz has worked in construction, and Nincy is studying psychology. The family has lived for several years with Nincy's parents, who help support them. The children receive public medical insurance and nutritional assistance.

In 2013, shortly after his arrival in the United States, Bonilla-Cruz learned that a court in El Salvador had summoned him related to an extortion charge, which he claims is unfounded. He decided to ignore the charge until after his marriage in 2019, when he consulted an attorney in El Salvador who indicated that he could easily resolve the charge if Bonilla-Cruz returned to El Salvador. Bonilla-Cruz did not return to El Salvador. He was arrested and detained in 2023 for being present in the U.S. without admission. While he was detained, a detention facility administrator reported that Bonilla-Cruz was a suspected member of an El Salvadorian gang, which Bonilla-Cruz also denies.

Bonilla-Cruz applied for withholding of removal under the CAT, asserting that he fears detention on the extortion charge, suspicion as a gang member because of the detention facility administrator's report, and torture in El Salvador, which has implemented a "state of exception" to combat gang violence. The state of exception allows authorities to arrest anyone suspected of gang membership and suspends suspects' civil rights, including the right to legal counsel during initial investigations. The U.S. State Department has compiled reports of arbitrary arrests, poor prison conditions, detainee deaths, and torture in El Salvador under the state of exception.

Bonilla-Cruz also applied for cancellation of removal based on exceptional and extremely unusual hardship to Nincy and their children. He is concerned that Nincy and the children will experience severe financial and emotional hardship during his absence.

The IJ denied both of Bonilla-Cruz's applications for relief. Bonilla-Cruz appealed to the BIA. The BIA affirmed the IJ's denial but acknowledged that Bonilla-Cruz would likely be detained if removed to El Salvador and that he may be suspected of gang membership. As to the CAT claim, the BIA held that Bonilla-Cruz could not establish that he is more likely than not to be tortured because he did not face a particularized threat of torture and because an attorney told him in 2019 that he could easily resolve the extortion charge. On the cancellation of removal claim, the BIA held that Nincy and the children's emotional and financial hardship was not exceptional and extremely unusual because they have support from Nincy's parents, access to government assistance, and Bonilla-Cruz may be able to immigrate through Nincy, a U.S. citizen.

Bonilla-Cruz petitions this court for review of the denial of CAT relief and cancellation of removal. A motions panel denied his motion to stay removal, so he has already been removed to El Salvador, where he is reportedly detained.[1]

## II.

Bonilla-Cruz challenges the BIA's and IJ's decisions not to grant CAT relief nor cancel his removal. We address each in turn.

## A.

An applicant seeking CAT relief must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Torture is defined, in relevant part, as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her

---

[1] Bonilla-Cruz's removal does not moot his petition for review because he has a continuing injury in the form of a statutory five-year ban on reentering the country. *Garcia-Flores v. Gonzales*, 477 F.3d 439, 441 n.1 (6th Cir. 2007); *see also Tantchev v. Garland*, 46 F.4th 431, 434 n.1 (6th Cir. 2022) (recognizing that DHS policy sometimes requires ICE to facilitate a removed noncitizen's return).

or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, [or] intimidating or coercing him or her or a third person[.]

*Id.* § 1208.18(a)(1).

A generalized risk of torture is insufficient, *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1156 (6th Cir. 2010); the applicant must show a "particularized threat of torture[,]" *Abdulahad v. Garland*, 99 F.4th 275, 293 (6th Cir. 2024) (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006)). When assessing likelihood of torture, the agency must consider:

[A]ll evidence relevant to the possibility of future torture . . . including, but not limited to: (i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3).

When the BIA releases its own opinion, we review that opinion as the final agency determination, while also considering the IJ's decision to the extent the BIA adopts its reasoning. *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 663 (6th Cir. 2024) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review the CAT likelihood-of-torture determination under the substantial-evidence standard. *See Vasquez-Rivera v. Garland*, 96 F.4th 903, 911 (6th Cir. 2024). Under that "highly deferential" standard, "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah v. Barr*, 590 U.S. 573, 583–84 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**1.**

Bonilla-Cruz raises several related procedural challenges to the likelihood-of-torture determination. He argues that the BIA failed to use the likelihood-of-torture factors, analyze why he did not meet them, and meaningfully consider his country-conditions evidence.[2]

We require the BIA "to analyze and explain the basis on which it decides against a petitioner." *Preçetaj v. Sessions*, 907 F.3d 453, 458 (6th Cir. 2018) (quoting *Lindor v. Holder*, 317 F. App'x 492, 498 (6th Cir. 2009)). And we have sometimes found it necessary to remand cases to the BIA for further explanation when it fails to do so. *See, e.g.*, *Zometa-Orellana v. Garland*, 19 F.4th 970, 980 (6th Cir. 2021); *Mapouya v. Gonzales*, 487 F.3d 396, 415 (6th Cir. 2007). But we have also cautioned against "overread[ing] any disclosure-of-reasons requirement" into substantial-evidence review. *Palucho v. Garland*, 49 F.4th 532, 539 (6th Cir. 2022). "[A]s long as we can reasonably identify the basis for the agency's finding, we cannot hold that the agency committed this type of error even if its logic is of 'less than ideal clarity[.]'" *Id.* (quoting *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021)). Put differently, we are only concerned with whether the decision is "so deficient that we cannot even evaluate whether a 'reasonable adjudicator would be compelled' to reach the opposite finding." *Id.* (citations omitted). The BIA's opinion meets this low bar.

---

[2] Bonilla-Cruz also raises points of error in the IJ's opinion, including that it incorrectly analyzed Bonilla-Cruz's CAT claim as if he fears torture by gangs instead of torture by government officials while detained and that it mistakenly relied on precedent from the Third Circuit instead of the Sixth Circuit. We need not address these arguments because the BIA's decision is the one we review, it did not adopt the IJ's reasoning about potential torture by gangs, and it cited Sixth Circuit caselaw. *Amezola-Garcia v. Lynch*, 846 F.3d 135, 142–43 (6th Cir. 2016) (explaining that the IJ's errors are only relevant if the BIA adopts them. Indeed, the BIA noted that it affirmed the IJ's denial of CAT relief based only on the grounds it discussed.

Bonilla-Cruz faults the BIA for "never mention[ing] the factors that bear on whether a petitioner has established [a] threat of torture[.]" He relies on *Mapouya*, in which we remanded a case because the IJ did not consider Mapouya's CAT claim "through the lens of" the four § 1208.16(c)(3) factors. 487 F.3d at 415. But we do not "requir[e] separate comments on every piece of evidence relating to these considerations"; we only confirm that "the record shows that an adjudicator adequately made the considerations at all." *Tello-Rivera v. Lynch*, 644 F. App'x 697, 700 (6th Cir. 2016). We remanded *Mapouya* because the IJ rejected the CAT claim "stating simply that 'the evidence falls well short of a grant under that section of law.'" *Mapouya*, 487 F.3d at 415.

Here, the BIA made the appropriate considerations and adequately explained its reasoning. It explained what Bonilla-Cruz must prove to establish entitlement to CAT relief and concluded that he failed to prove that it is more likely than not that he would be tortured. The BIA cited Bonilla-Cruz's country-conditions evidence and reasoned that despite reports of human rights violations in El Salvador, "including issues within prisons[,]" "such generalized reports are insufficient to show that [Bonilla-Cruz] faces a 'particularized threat of torture.'" And the Board's focus on the country conditions evidence made good sense, given that the only argument Bonilla-Cruz made to the BIA as to the likelihood of torture depended entirely on the "country conditions evidence in the record." Under such circumstances, there was no need for the BIA to address all of the § 1208.16(c)(3) factors. *See Yan Xia Zhang v. Mukasey*, 543 F.3d 851, 854–55 (6th Cir. 2008) (recognizing that if a "necessary element" of the petitioner's claim fails, the BIA "owe[s] no duty to rehearse the rest of [the petitioner's] evidence for sake of completeness"). To the extent that the BIA's explanation is not as thorough as it could be, we do not have "the authority to grade the agency's 'opinion-writing' abilities." *Palucho*, 49 F.4th at 539 (quoting *T-Mobile S., LLC v.*

6

*City of Roswell*, 574 U.S. 293, 308–09 (2015) (Alito, J., concurring)). We can identify the basis of the BIA's decision, and that is all we require. *Id.*

**2.**

We also conclude that substantial evidence supports the BIA's finding that Bonilla-Cruz could not show likelihood of torture. Bonilla-Cruz contends that torture of suspected gang members in El Salvadorian prisons is so severe and pervasive that he will be tortured.[3] We acknowledge that conditions have changed under the state of exception and that Bonilla-Cruz's country-conditions evidence includes some reports of suspected gang members being tortured in prison. The BIA considered the reports too generalized to present a likelihood that Bonilla-Cruz would be tortured. Bonilla-Cruz views his evidence differently, but that the BIA could have found for Bonilla-Cruz or even that reasonable minds could differ are insufficient. *See id.* at 540–541. We can only vacate the BIA's finding if "any reasonable adjudicator would be compelled to conclude to the contrary[,]" *Nasrallah*, 590 U.S. at 583–84, but Bonilla-Cruz cites no authority compelling us to find a likelihood of torture based on country-conditions evidence alone.[4] *Cf.*

---

[3] Bonilla-Cruz primarily challenges the BIA's reliance on the attorney's 2019 statement that he could easily help Bonilla-Cruz resolve the charges, but that statement was not the only basis of the BIA's decision. The BIA found that Bonilla-Cruz's country-conditions evidence failed to establish that he in particular is more likely than not to be tortured. That finding is sufficient alone to defeat Bonilla-Cruz's CAT claim, so we do not address the BIA's reliance on the attorney's statement. *See* § 1208.16(c)(2); *Almuhtaseb*, 453 F.3d at 751.

[4] Bonilla-Cruz briefly points to the experiences of other suspected gang members he knows, but they likewise do not compel us to conclude that he is likely to be tortured. Bonilla-Cruz testified that he has "acquaintances" who have been imprisoned in El Salvador, "have appeared on TV[,]" and "look different than they were because of the bad treatment that they received inside." The statement includes no information about the acquaintances, whether they were suspected gang members, or whether the treatment they received constituted torture, so it is too speculative to prove that Bonilla-Cruz will likely be tortured. Similarly, Bonilla-Cruz mentioned that his alleged co-extortionists were detained, but he cites no evidence suggesting that they were tortured for being suspected gang members.

*Yousif v. Garland*, 53 F.4th 928, 938 n.5 (6th Cir. 2022) ("[W]e have never held that certain country-conditions reports, on their own, warrant relief. This is because each noncitizen must establish a particularized threat to him or her, and reports, on their own, don't get them over the line."); *Vasquez-Rivera*, 96 F.4th at 911; *In re G-A-*, 23 I. & N. Dec. 366, 368 (BIA 2002) (considering country-conditions evidence as proof of likelihood of torture alongside the petitioner's risk based on his religion, ethnicity, criminal history, and ties to the United States).

**B.**

To be eligible for cancellation of removal, a noncitizen must meet several statutory requirements, including "establish[ing] that removal would result in exceptional and extremely unusual hardship" to the noncitizen's citizen or permanent resident spouse, parent, or child. 8 U.S.C. § 1229b(b)(1)(D). We have recently interpreted that standard as a "hardship sustained by a deported alien's qualifying relatives that's significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). That reading of the statute "squares" with prior BIA authority, *id.* at 423, which was understood to impose an "onerous" standard that "limited" relief "to 'truly exceptional' situations," *Valdez-Arriaga v. Barr*, 778 F. App'x 380, 383 (6th Cir. 2019) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62 (BIA 2001)). We cannot review the underlying factual determinations, but we do have jurisdiction to review the IJ or BIA's answer to whether the noncitizen has met the standard. *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024). That review is deferential. *Id.* "Where, as here, the BIA 'merely paraphrased the IJ's findings and expressly concurred with [the IJ's] decision,' we 'review the decision of the IJ while considering any additional analysis by the BIA.'" *Mazariegos-Rodas*, 122 F.4th at 675 (quoting *Ventura-Reyes v. Lynch*, 797 F.3d 348, 358 (6th Cir. 2015)).

Bonilla-Cruz raises three points of error: (1) the IJ's finding that he can immigrate through his U.S.-citizen wife, (2) the IJ's choice to weigh his family's reliance on public assistance against a finding of hardship, and (3) the IJ's (and subsequently, the BIA's) conclusion that the hardship to his family does not meet the statutory standard.

First, we decline to address Bonilla-Cruz's argument about the IJ's allegedly erroneous factual findings, including the finding that he can immigrate through Nincy, a U.S. citizen. The IJ's factual findings are unreviewable; only "whether th[e] established facts satisfy the statutory eligibility standard is subject to judicial review." *Wilkinson*, 601 U.S. at 225.

Second, the IJ did not err when it weighed the children's reliance on public assistance against a finding of financial hardship. The BIA has done so before. *See, e.g.*, *Sustaita-Lopez v. Garland*, No. 21-4200, 2024 WL 509619, at *3 (6th Cir. Feb. 9, 2024). Bonilla-Cruz does not cite any BIA or Sixth Circuit authority suggesting that it should not.

Third, the IJ's conclusion that Bonilla-Cruz is not eligible for cancellation of removal survives our deferential review. The IJ acknowledged that Nincy relies on Bonilla-Cruz to provide emotional support, that she suffers from depression and anxiety, and that the separation would be difficult for her and the children. The IJ also recognized that the loss of Bonilla-Cruz's income will cause financial hardship. But the IJ explained that the emotional and financial hardship are not exceptional and extremely unusual because the children receive public assistance, which Nincy may also qualify for after his removal, and they already live with her parents, who are a significant source of support for them. Indeed, the IJ found that with Nincy's parents' support, Nincy remained in school while Bonilla-Cruz was detained.

Bonilla-Cruz accuses the IJ of minimizing his family's hardship. Questions as to the severity of Bonilla-Cruz's wife's condition are fact-based questions over which we lack

jurisdiction. *Galvez-Bravo v. Garland*, 119 F.4th 1038, 1040 (6th Cir. 2024) (recognizing lack jurisdiction to question the findings about the severity of a family member's health conditions).

Bonilla-Cruz reemphasizes the severity of Nincy's mental health and argues that it will deteriorate in Bonilla-Cruz's absence, especially because he is detained, and that her pain will detrimentally affect the children. Emotional pain is generally not an exceptional and extremely unusual consequence of removal, even if it worsens preexisting mental health troubles. *Fernandez-Villafan v. Garland*, No. 23-3223, 2023 WL 8651267, at *4 (6th Cir. Dec. 14, 2023) ("It is obvious that a father's removal may worsen his children's psychological state, especially when a child has struggled with depression in the past . . . . But family separation and associated psychological harm are not extremely unusual."). This is especially true here because Nincy and the children have the financial and emotional support of Nincy's parents, with whom they live. *Cf. In re B-J-N-*, 2016 WL 4072971, at *4 (AAO July 7, 2016) (finding exceptional and extremely unusual hardship where applicant's spouse, who was diagnosed with depression, would bear financial and parenting responsibilities alone).

Ultimately, while Nincy and the children will suffer some hardship, considering her parents' support, Bonilla-Cruz's failure to point to any authority suggesting the IJ or BIA erred, and the deferential standard of review, we cannot say that the IJ or BIA erred in concluding that Bonilla-Cruz cannot show exceptional and extremely unusual hardship.

### III.

For the foregoing reasons, we deny Bonilla-Cruz's petition for review of his claim for CAT relief and cancellation of removal.