NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0074n.06

No. 25-3298

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DOMINGO ANTONIO LOPEZ ALVARDO,

    Petitioner,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 04, 2026
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

OPINION

Before:  SUTTON, Chief Judge; STRANCH and LARSEN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Domingo Antonio Lopez Alvarado, a 47-year-old Salvadoran man now living in the United States, applied for asylum, withholding of removal, and protection under the Convention Against Torture.  The Immigration Judge denied all three claims. The Board of Immigration Appeals affirmed the IJ's denial of his asylum and withholding claims, concluding that they were untimely, that the harm he suffered did not rise to the level of persecution, and that he failed to establish a nexus between the harm and his membership in a particular social group.  The BIA also affirmed the IJ's denial of the CAT claim, determining that Lopez Alvarado had not shown that he would more likely than not be tortured upon his return nor had he established that Salvadoran officials acquiesced in his torture.  Because substantial evidence supported these rulings, we **DENY** Lopez Alvarado's petition for review.

## I.   BACKGROUND

### A.   Factual Background

Lopez Alvarado is a native and citizen of El Salvador who entered the United States unlawfully on November 1, 2014.  While living in El Salvador, he became a police officer in June 2000 and worked for the police department for approximately 14 years.  In 2011, he was working in a jail when an incarcerated MS-13 gang leader asked him to bring drugs into the jail.  When Lopez Alvarado refused, the inmate threatened him, saying that was why MS-13 kills police officers and that killing another one would not be a big deal.  Lopez Alvarado did not report this threat.  Three months later, MS-13 threatened him a second time, saying that they had "the green light to go visit [him] . . . and . . . kill [him]."  After this threat, he asked to be transferred to a different police station but did not report the threat.

Approximately three years later, in August 2014, Lopez Alvarado requested a one-year leave of absence from the police department so he could leave the country due to his fear of gang violence.  On September 21, 2014, he and two other officers were involved in a shooting with MS-13 in which a gang member was killed.  On September 23, a woman called Lopez Alvarado and told him that MS-13 was looking for the officers involved in the shooting, they knew he was involved and where he lived, and they were going to kill him.  After this third threat, in October 2014, Lopez Alvarado left El Salvador, and on November 1, he entered the United States.  In October 2018, he formally resigned from his position as a police officer.

### B.   Procedural Background

On May 25, 2017, the Government initiated removal proceedings against Lopez Alvarado and issued a Notice to Appear (NTA).  He admitted the NTA's factual allegations and conceded that he was subject to removal, but as a form of relief, he sought political asylum under 8 U.S.C.

§ 1158(b)(1)(A), withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture (CAT). He sought asylum and withholding of removal based on membership in a particular social group, which he defined as "former active duty police officers."[1]

On December 6, 2017, Lopez Alvarado appeared before the IJ and filed an application for relief. Two merits hearings before the IJ were held on February 2, 2019 and August 23, 2019, during which he, his wife, and a witness testified. The IJ determined that he was credible but denied his application for asylum, withholding of removal, and CAT protection. The IJ denied the asylum and withholding claims because they were untimely, as they were filed more than one year after Lopez Alvarado's entry into the United States and lacked an applicable exception. Alternatively, the IJ reasoned that even if the applications were timely, Lopez Alvarado had failed to establish that the harm he suffered rose to the level of persecution or that this harm was attributable to his membership in a particular social group. The IJ rejected the CAT claim because Lopez Alvarado did not show that it was more likely than not that the gang would torture him upon his return, nor did he establish that the Salvadoran government acquiesced in the harm he suffered.

On January 3, 2020, Lopez Alvarado appealed the IJ's decision to the Board of Immigration Appeals (BIA). The BIA affirmed the IJ's decision.

Lopez Alvarado timely appealed.

## II. DISCUSSION

Lopez Alvarado contends that the BIA erred in affirming the IJ's denial of his claims because changed circumstances allowed him to file his petition beyond the one-year filing

---

[1] Lopez Alvarado also sought asylum and withholding based on political opinion, specifically the imputed political opinion of his employers. Lopez Alvarado does not appeal the denial of asylum or withholding based on political opinion grounds, so we decline to address it here. And "the holding of a published panel opinion binds all later panels unless overruled or abrogated en banc or by the Supreme Court." *Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019).

deadline, he sufficiently established that he was persecuted on account of his membership in a particular social group, and he showed that it was more likely than not that he would be tortured upon his return to El Salvador.[2] We address each argument in turn.

## A. Standard of Review

We review the BIA's decision as the final agency determination when the BIA has reviewed the IJ's decision and issued a separate opinion. *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021). We also review the IJ's decision to the extent the BIA adopted its reasoning. *Id.* We review legal conclusions de novo, and factual findings under the substantial-evidence standard. *Turcios-Flores v. Garland*, 67 F.4th 347, 353–54 (6th Cir. 2023) (citing *Juan Antonio v. Barr*, 959 F.3d 778, 788 (6th Cir. 2020)). Under this standard, factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Zometa-Orellana*, 19 F.4th at 976 (citation modified).

## B. Timeliness

An application for asylum or withholding of removal must generally be filed within one year of the petitioner entering the United States. 8 U.S.C. § 1158(a)(2)(B). An exception to this one-year filing deadline exists where the petitioner shows changes in the conditions in his country of origin that materially affect his eligibility for asylum. 8 U.S.C. § 1158(a)(2)(D). Lopez Alvarado concedes that he filed his petition after the one-year deadline but contends that changes in El Salvador since his departure warrant an exception. The IJ rejected this argument, denying the petition because it was untimely, and alternatively, because it failed on the merits. Because,

---

[2] Lopez Alvarado also asks us to overrule prior Sixth Circuit decisions and hold that there is no jurisdiction over his immigration case because there was a defect in his NTA. But, as he acknowledges, Sixth Circuit precedent forecloses this argument. *Ramos Rafael v. Garland*, 15 F.4th 797, 801 (6th Cir. 2021) (explaining that for jurisdictional purposes, it is not necessary that the NTA contain all the required information or that it be included in a single document).

as discussed below, we determine that Lopez Alvarado's appeal fails on the merits, we need not address whether an exception to the untimeliness of his petition applies.

### C.    Asylum Claim

To be eligible for asylum, a petitioner must show that he is "unable or unwilling" to return to his country of origin because he was persecuted, or has a well-founded fear of persecution, based on his race, religion, nationality, political opinion, or membership in a particular social group.  8 U.S.C. § 1158(b)(1)(A) (adopting eligibility requirements from 8 U.S.C. § 1101(a)(42)(A)). While the INA does not define persecution, courts consider it "an extreme concept that does not include every sort of treatment our society regards as offensive." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (citation modified).  Threats, unaccompanied by physical harm, generally do not amount to persecution.  *Id.* at 701.  But if the threats are "immediate and menacing," they may establish persecution.  *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 676 (6th Cir. 2024) (citing *Japarkulova*, 615 F.3d at 701)).

Lopez Alvarado contends that the BIA erred in affirming the IJ's determination that the threats he received did not rise to the level of persecution.  The IJ reasoned that Lopez Alvarado was threatened three times over the course of four years but was never physically harmed, explaining that this type of mistreatment is common to police officers and part of the dangers inherent in serving in the police force.  The IJ therefore held that the threats do not rise to the level of past persecution, nor do they establish a well-founded fear of future persecution.  Affirming that decision, the BIA noted that such mistreatment was an occupational hazard of a dangerous job— not persecution.  It pointed out that other police officers in Lopez Alvarado's district transferred to a different district and were able to live and work safely.  Although Lopez Alvarado testified that MS-13 killed several of his family members, the BIA explained that the killings were for

reasons unrelated to serving as a police officer, and that a fear of generalized gang violence does not establish eligibility for asylum or withholding.

The threats Lopez Alvarado received occurred over four years without MS-13 physically harming him, which makes the threats less immediate and menacing. Further, he has not shown that these threats were more than the normal dangers inherent in serving as a police officer. Though threats made toward police are "occupational hazards of a dangerous job," they do not, alone, establish persecution. *Akmatov v. Barr*, 799 F. App'x 897, 905 (6th Cir. 2020). Lopez Alvarado's testimony indicates that other officers in his district were able to transfer to different districts and continue to live in El Salvador, which does not support a fear of future persecution. Although Lopez Alvarado's testimony does establish a fear of generalized gang violence, moreover, such a fear is insufficient for asylum. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013).

Accordingly, there is substantial evidence supporting the IJ's denial of Lopez Alvarado's asylum claim.

### D.   Withholding of Removal Claim

To qualify for withholding of removal, a petitioner must show that if removed to his country of origin, his "life or freedom would be threatened" based on his "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). As in an asylum claim, the petitioner must establish a nexus between an enumerated protected ground and the alleged harm. *Turcios-Flores*, 67 F.4th at 357–58. But the petitioner faces a higher burden for withholding claims than for asylum claims—he must show a "clear probability" that he would be subject to persecution upon removal to his country of origin. *Kolov v. Garland*, 78 F.4th 911, 919 (6th Cir. 2023) (citing *Berri v. Gonzales*, 468 F.3d 390, 397

(6th Cir. 2006)) (*abrogated on other grounds by Riley v. Bondi*, 606 U.S. 259 (2025)).  The principle that where a petitioner's asylum claim fails, so too does his withholding claim, applies on this record.  *Berri*, 468 F.3d at 397.  Accordingly, we affirm the IJ's denial of the withholding claim.

> ### E.  Convention Against Torture Claim

To qualify for CAT protection, a petitioner must show that he would more likely than not be tortured if returned to his country of origin.  *Vasquez-Rivera v. Garland*, 96 F.4th 903, 911 (6th Cir. 2024).  Such torture must be inflicted by a public official or with an official's consent or acquiescence.  *Mateo-Esteban v. Garland*, 125 F.4th 762, 768 (6th Cir. 2025) (citing 8 C.F.R. § 1208.18(a)(1)).  Officials acquiesce to the torture if they know of it before it occurs and then do not intervene despite a legal responsibility to do so.  *Id.* (citing 8 C.F.R. § 1208.18(a)(7)).  Acquiescence can include "willful blindness" to the torture of a private individual.  *Sabastian-Andres v. Garland*, 96 F.4th 923, 931 (6th Cir. 2024) (quoting *Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006)).

Lopez Alvarado contends that the IJ erred by not making a specific finding that Salvadoran authorities were unable or unwilling to protect him.  In support, he points to a 2019 Human Rights Report describing gang violence throughout the country.  The record shows, however, that the IJ denied the CAT claim because even though Lopez Alvarado had presented evidence showing widespread gang violence in El Salvador, he did not establish that the Salvadoran government acquiesced in that violence.  The IJ found that the Salvadoran government struggled to control the gangs but was actively attempting to combat them.  The BIA affirmed the IJ's decision, explaining that Lopez Alvarado had failed to show a factual or legal error in its reasoning.

The only record evidence Lopez Alvarado now points to in support of his argument is a country conditions report describing widespread gang violence. But the record shows that El Salvador is attempting to combat this violence. *See, e.g.*, AR 507, OSAC Report ("The police's investigative units have shown great promise."); AR 280, 2018 Crisis Group Report ("Over the last fifteen years, various Salvadoran governments have tried to crush gangs *con mano dura*—with an iron fist. They have mounted massive joint military and police operations in the capital and other cities, arresting thousands."); AR 287, U.S. Department of State Report (explaining that El Salvador is undertaking efforts to combat gangs by: developing a violence prevention national security plan in 2015; designating MS-13 and Barrio 18 as terrorist organizations; and in 2016, passing a series of emergency measures to strengthen prison security and police operations that contributed to a significant drop in homicides). When a country, such as El Salvador, "has made meaningful efforts to control private violence but is still struggling to gain the upper hand, we generally do not say that public officials are willfully blind to the problem." *Sabastian-Andres*, 96 F.4th at 931 (citing *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015)).

Accordingly, substantial evidence supported the IJ's denial of the CAT claim.

### III.    CONCLUSION

For the foregoing reasons, we **DENY** Lopez Alvarado's petition for review.