RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JUAN LUIS GAMAS-VICENTE,

         *Petitioner*,

    *v.*

TODD W. BLANCHE, Acting Attorney General,

         *Respondent*.

No. 25-3415

On Petition for Review from the Board of Immigration Appeals.
No. A 206 454 387.

Decided and Filed: April 7, 2026

Before: GIBBONS, THAPAR, and LARSEN, Circuit Judges.

─────────────

**COUNSEL**

─────────────

**ON BRIEF:** Margaret W. Wong, MARGARET WONG & ASSOCIATES LLC, Cleveland, Ohio, for Petitioner. Andrea Gevas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

**OPINION**

─────────────

THAPAR, Circuit Judge. Juan Luis Gamas-Vicente illegally entered the United States in 2014. He conceded that he was removable but has spent the last decade seeking asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge rejected his application, and the Board of Immigration Appeals affirmed. They concluded that Gamas-Vicente didn't establish that he is a member of a particular social group facing persecution. We agree, so we deny his petition for review.

Juan Luis Gamas-Vicente, a Guatemalan national, illegally entered the United States as an unaccompanied minor. The next day, he received a notice to appear charging him with removability. *See* 8 U.S.C. § 1182(a)(6)(A)(i). But he didn't show up for his first immigration hearing. Or his second. When he failed to appear the second time, an immigration judge (IJ) ordered Gamas-Vicente removed in absentia. Gamas-Vicente then filed a motion to reopen his case. The IJ granted the motion and rescinded the removal order. Gamas-Vicente conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Gamas-Vicente's claims related to his alleged experiences with the Mara 18 gang in Guatemala and his Mayan ethnicity. In his asylum application, he recounts that "everything started" when Mara 18 members asked him to join their gang and he refused. AR 609. Gamas-Vicente believes that Mara 18 kills people who refuse to join and that its members raped his sister in retaliation for his refusal. Gamas-Vincente also alleges that "the Latino controlled police and government treat Mayans as second-class," so he fears the police won't protect him from the gang. *Id.* And that's why he claims he left Guatemala and illegally entered the United States.

An IJ held a hearing to evaluate Gamas-Vicente's application. Gamas-Vicente testified that when he was 17, five Mara 18 members armed with knives, a machete, and nunchucks asked him to join their gang and commit crimes for them. When he said no, they "threw [him] to the floor" and told him to think about it. AR 138. Gamas-Vicente alleged that eight gang members approached him a few days later, and he again refused to join. They grew angry, threw him to the floor, kicked him, and threatened him with a gun. And they told Gamas-Vicente they would kill him if they found him again. Gamas-Vicente said the encounter left him with "lots of bruises," which his mother treated with plants. AR 142–43. He reported the incident to police, who didn't believe him or file a report. So Gamas-Vicente decided to leave Guatemala because he believed the gang would carry out its threats.

Shortly after Gamas-Vicente left for the United States, his sister was raped. Gamas-Vicente testified that Mara 18 members told him that the rape was in retaliation for his leaving Guatemala. He further stated that gang members approached one of his other sisters and told her that Gamas-Vicente "knows what we did to his sister. So if he ever comes back, we will kill him." AR 146. Since those events in 2014, his mother and five sisters have remained in Guatemala, unharmed.

Gamas-Vicente had previously stated that when he was a child, Mara 18 kidnapped his father. His mother and sister submitted letters saying the same. But at the hearing, Gamas-Vicente retracted this statement and said he didn't recall making it. Instead, he insisted that his father abandoned the family.

Following the hearing, the IJ denied Gamas-Vicente's applications for asylum, withholding of removal, and CAT protection. Even though the IJ found Gamas-Vicente credible, the IJ noted significant discrepancies in Gamas-Vicente's testimony and contradictions with his supporting evidence.

The IJ then turned to the merits of Gamas-Vicente's asylum and withholding-of-removal claims. Gamas-Vicente sought relief because he feared persecution based on his membership in four particular social groups: (1) "young Guatemalan men who refuse to join gangs," (2) "young indigenous men in Guatemala who refuse to join gangs," (3) "young indigenous men in Guatemala who refuse to join gangs and lack police protection," and (4) his own "immediate family." AR 128–29. The IJ rejected the first three groups because they swept too broadly and weren't sufficiently particular to be recognized as a discrete group by Guatemalan society. The IJ also rejected all four groups for an independent reason: Gamas-Vicente failed to show that the gang targeted him because of his membership in any of them. Instead, his testimony showed that the gang recruited him solely to "increase its wealth and power." AR 59. Additionally, the IJ found that Gamas-Vicente failed to show that his past experiences with the gang amounted to persecution, as required for an asylum application. Because Gamas-Vicente couldn't meet the lower standard for asylum, his withholding-of-removal claim also failed. Finally, the IJ rejected Gamas-Vicente's CAT claim because he hadn't shown that he was likely to be tortured or that the government would initiate, consent to, or acquiesce in any torture.

Gamas-Vicente appealed to the Board of Immigration Appeals, which adopted and affirmed the IJ's decision regarding asylum and withholding of removal.[1]  The Board also found that Gamas-Vicente had "waived" his claim for CAT protection.  AR 5.  He timely petitioned this court for review.

## II.

We review the Board's written opinion as a final agency order, and the IJ's opinion to the extent that the Board adopted and affirmed its findings and reasoning.  *Kilic v. Barr*, 965 F.3d 469, 472 (6th Cir. 2020).  We apply the "highly deferential" substantial-evidence standard to the agency's factual findings.  *Nasrallah v. Barr*, 590 U.S. 573, 582–83 (2020); 8 U.S.C. § 1252(b)(4)(B).  And we review questions of law de novo.  *Cristales-de Linares v. Bondi*, 161 F.4th 401, 407 (6th Cir. 2025).

The Attorney General may discretionarily grant asylum to refugees.  8 U.S.C. § 1158(b)(1).  To successfully claim asylum, an alien must show (1) that he faced past persecution (or has a well-founded fear of future persecution) (2) because of his membership in a particular social group and (3) that the persecution was committed by government actors or non-government actors the government was unable or unwilling to control.  *Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024).  Withholding of removal is more stringent than asylum and requires the alien to show "a clear probability of persecution" in the designated country of removal based on membership in a protected group.  *INS v. Stevic*, 467 U.S. 407, 413 (1984).  So, both forms of relief require aliens to show harm caused by group membership.

Gamas-Vicente brings various challenges related to the Board's rejection of his claims.  But they all suffer from the same flaw:  Gamas-Vicente forfeited his arguments about the particular social groups he identified before the agency.  And he failed to exhaust the three new groups he presents in his petition for review.  Without membership in a particular persecuted social group, Gamas-Vicente's claims fail.

---

[1]Gamas-Vicente claims the Board's "summary affirmance" was "arbitrary and capricious" and thus legally erroneous.  Petitioner's Br. at 27.  But the Board didn't summarily affirm.  It issued an opinion that adopted and affirmed the IJ's decision.  Adopting and affirming an IJ's decision demonstrates that the Board "exercise[d] its independent review authority over the case." *Gishta v. Gonzales*, 404 F.3d 972, 980 (6th Cir. 2005).

A.

Our review of final orders of removal is limited to claims that the alien has already presented to the Board. 8 U.S.C. § 1252(d); *Herrera v. Bondi*, 162 F.4th 617, 621 (6th Cir. 2025). Although that exhaustion requirement isn't jurisdictional, it is a mandatory claim-processing rule that we must enforce when the government raises it. *Id.* The government has done so here. So we must compare Gamas-Vicente's brief before the Board to his brief before our court to determine whether he exhausted his claims. *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020).

1.

Before the agency, Gamas-Vicente argued that he faced persecution based on his membership in one of four particular social groups: (1) young Guatemalan men who refuse to join gangs, (2) young indigenous Guatemalan men who refuse to join gangs, (3) young indigenous men in Guatemala who refuse to join gangs and lack police protection, and (4) his own immediate family. In his petition for review, however, he mentions none of those groups.

We can't address his arguments about any of these groups. Like any other litigant, "an immigration petitioner must raise a claim in the opening brief to preserve it." *Mbonga v. Garland*, 18 F.4th 889, 898 (6th Cir. 2021). But in his petition for review, Gamas-Vicente didn't contest the rejection of the four particular social groups he identified before the agency. So he has forfeited any challenge based on those social groups.

2.

The new particular social groups described in his petition for review fare no better. We can review an alien's claim only after he has "exhausted all administrative remedies available to [him] as of right." 8 U.S.C. § 1252(d). That exhaustion provision "require[s] precision": The alien must "preserve *each claim*" by exhausting his remedies before the Board. *Cuevas-Nuno*, 969 F.3d at 334 (emphasis in original) (quotation omitted). Gamas-Vicente asks us to evaluate three new social groups: (1) indigenous Q'eqchi' families in Ixcan resisting gang membership, (2) young indigenous men in rural Guatemala refusing Mara 18 membership, and (3) family

members of gang victims in Guatemala.  But those groups appear nowhere in his brief before the Board.  So he hasn't exhausted his administrative remedies for his claims about the social groups raised for the first time in his petition for review.

To be sure, the four groups Gamas-Vicente proposed before the agency might resemble and overlap with the ones he's proposed before this court.  But mere resemblance isn't sufficient to conclude he presented them to the agency.  Courts analyze the exact, granular contours of a petitioner's proposed particular social groups.  *Cf., e.g.*, *Cristales-de Linares*, 161 F.4th at 410–11 (distinguishing between the proposed groups "Salvadoran women," "single Salvadoran women who are working professionals," and "salon owners in El Salvador").  If we analyzed Gamas-Vicente's similar, but newly proposed groups after the agency rejected his first attempts as "too broad" and "not sufficiently particular," we would allow him to circumvent the INA's exhaustion requirement.  AR 59; 8 U.S.C. § 1252(d).

To see why, consider two of Gamas-Vicente's proposed groups.  Before the Board (but forfeited on appeal), he identified the group of "young indigenous Guatemalan men who refuse to join gangs."  AR 25, 128.  Before us (but not exhausted before the agency), he identifies a similar group:  young indigenous men in rural Guatemala refusing Mara 18 membership.  Even if these groups resemble each other, our cases show why raising the former group didn't exhaust the latter.  We routinely reject proposed groups as insufficiently particular if they "sweep[] in broad demographics."  *Cristales-de Linares*, 161 F.4th at 409.  We also require that the group is "actually perceive[d]" as "a distinct class of persons subject to persecution."  *Reyes Galeana v. Garland*, 94 F.4th 555, 559 (6th Cir. 2024).  So Gamas-Vicente's additional modifiers—limiting the group to "rural" areas and a specific gang—change the group's particularity and discreteness by narrowing potential members from the entire country to a more limited segment and increasing the likelihood that society would recognize it as a discrete social group.  The INA's exhaustion requirement ensures that the Board, as the agency charged with implementing our immigration laws, gets a full opportunity to review an alien's claims before we weigh in—and to create an administrative record for our review.  *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004).  We would thwart that statutory design if we gave Gamas-Vicente this second bite at the apple.

Without a particular social group, all of Gamas-Vicente's other arguments related to asylum and withholding of removal fail.  That's because an alien who can't "show persecution *on account of*" membership in a particular social group "cannot qualify for either asylum or withholding."  *Cristales-de Linares*, 161 F.4th at 408 (emphasis added).  So we need not consider Gamas-Vicente's other arguments, such as whether he experienced harm amounting to persecution or whether he could relocate within Guatemala to avoid that persecution.

B.

Gamas-Vicente mounts a variety of challenges that don't depend on the particular-social-group requirement.  All fail.

First, Gamas-Vicente argues in passing that the IJ's opinion "[e]rred by [u]nfairly [a]ssessing" the evidence and testimony for "discrepancies."  Petitioner's Br. at 24.  That claim lacks merit because the IJ concluded Gamas-Vicente was credible and gave his testimony "full evidentiary weight."  AR 55.  Additionally, the IJ noted that Gamas-Vicente and his family members "have very low levels of reading and writing abilities" and were young when these events took place, which may have caused any "discrepancies."  *Id.*  Far from "fail[ing] to weigh these contextual factors," the IJ thoughtfully considered them.  Petitioner's Br. at 24.  So the record disproves any error Gamas-Vicente now identifies.

Gamas-Vicente also raises a single challenge related to his CAT claim.  He contends that the IJ misapplied the "more likely than not" standard in denying him protection under the CAT.  But the Board concluded Gamas-Vicente "waived" his CAT claim by failing to challenge it on appeal.  AR 5.  And Gamas-Vicente doesn't challenge the Board's waiver finding in his opening brief, so he has forfeited any argument that he preserved the issue before the Board.

Gamas-Vicente also raises a due-process claim:  that he lacked a meaningful opportunity to present his case before the IJ and the Board due to "repeated and material deficiencies in interpretation and language access."  Petitioner's Br. at 23.  Gamas-Vicente's hearing included interpreters for both languages that he spoke—Aguacateco, his primary language, and Spanish.  Although Gamas-Vicente mentioned some "interpretation issues" in his brief to the Board, he never argued that his proceedings were constitutionally deficient.  AR 18; *see Cuevas-Nuno*, 969

F.3d at 334.  So he didn't exhaust his due-process claim as required by statute.  8 U.S.C. § 1252(d); *Herrera*, 162 F.4th at 621.  The government has raised the exhaustion requirement, so we decline to review Gamas-Vicente's late-raised claim.

\*    \*    \*

The petition for review is denied.