**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0378n.06

No. 10-3347

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 06, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| OMAR IZZAT GHANIM, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW OF |
| | ) | A DECISION OF THE BOARD |
| v. | ) | OF IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney | ) | |
| General, | ) | **O P I N I O N** |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**Before:  MOORE and GIBBONS, Circuit Judges; BORMAN, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.**  Omar Izzat Ghanim petitions this court for

review of the order of the Board of Immigration Appeals ("BIA") dismissing his appeal of the

Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal under the

Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture

("CAT").  Ghanim argues that the BIA erred in concluding that (1) he waived the issue of

corroboration, (2) it is reasonable to expect him to relocate safely within the Palestinian Territories,[1]

---

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of
Michigan, sitting by designation.

[1]The IJ ordered Ghanim removed to "Palestine or Israel in the alternative."  Administrative
Record ("A.R.") at 81 (Oct. 4, 2007 Hr'g Tr. at 5).  As we did in *Abudaya v. Holder*, 393 F. App'x
275, 276 n.1 (6th Cir. 2010) (unpublished decision), "[w]e adopt the terminology of the U.S.
Department of State most commonly used regarding the West Bank and the Gaza Strip and refer to
the area at issue as the Palestinian Territories."

and (3) he had not established a clear probability of torture if he returned to the Palestinian Territories. Because the evidence does not compel the contrary conclusions that Ghanim asserts, we **DENY** his petition for review.

## I. BACKGROUND & PROCEDURAL HISTORY

Ghanim is a twenty-five-year-old native of the Palestinian Territories. He was born in the village of Silt al Thaher in the Jenin area of the West Bank, where his family still lives. In January 2006, Ghanim was admitted to the United States as a nonimmigrant student to attend the University of Texas at Arlington. When Ghanim failed to continue classes, the Immigration and Naturalization Service served him on July 11, 2007, with a notice to appear for failure to maintain the conditions of his nonimmigrant status. INA § 237(a)(1)(C)(i). Ghanim, through counsel, conceded removability but sought asylum, withholding of removal under the INA, and protection under the CAT.

At an August 19, 2008 merits hearing regarding his asylum and withholding claims, Ghanim testified as follows. When he was in high school, Ghanim would go to the roof of his family's house to study for his examinations because his house was small and he had a large family. The roof of Ghanim's house, however, provided a good view of a place used by the al-Aqsa Martyrs Brigade (the "Brigade"), a "a group of West Bank militias affiliated with former Palestinian leader Yasir Arafat's al-Fatah faction" and recognized by the U.S. Department of State as a foreign terrorist organization. Administrative Record ("A.R.") at 228 (Council on Foreign Relations 2005 Backgrounder on the Al-Aqsa Martyrs Brigades). On four occasions, members of the Brigade, with their faces covered and

2

carrying guns, threatened to kill Ghanim if he continued to sit on the roof because they thought that Ghanim was spying on the group on behalf of Israel. The fifth time, they pointed a gun in Ghanim's face while threatening him. Ghanim stopped going to his roof to study after this fifth time; he was scared and it was close to his final examination.

On July 25, 2004, Ghanim was watching television with his brothers when four members of the Brigade came to his home, took him outside, covered his eyes, and put him in a car. The Israeli military was operating in the area, and the Brigade suspected that somebody had told the Israeli army about their place. They drove Ghanim to an old building where they started to torture him and ask him questions about being on the top of his roof. They accused him of taking pictures of the group and sending the photographs to the Israeli army; they did not accept Ghanim's explanation that he was studying on the roof. The members also offered him money in return for joining their group, but Ghanim refused. The Brigade then hit Ghanim in the head with the bottom of their rifle, and Ghanim lost consciousness. He awoke when the Brigade threw him from their car, about 20 meters from his home. Ghanim had been in the Brigade's custody for approximately two or three hours. During that time, the Brigade had also cut Ghanim on the cheek, but he refused to go to the hospital because he was afraid that the Brigade would follow him or wait for him at the hospital and kidnap him again. A private physician from his village came to his house and stitched up the cut.

Ghanim hid in his house for approximately three weeks while his stitches healed. He then left Silt al Thaher and went to live with his aunt in the city of Nablus to study at Al Najar College. When school started in September 2004, he studied there for two or three weeks but became scared

3

that the Brigade would follow him to the college and kidnap him. During that time, he called his family, who told him that the Brigade twice had come to the family's house to look for Ghanim. Although there were Brigade groups in the city and on the campus, he did not have any problems while in Nablus. He started to apply for his student visa in October 2004. For the year and a half after he stopped attending college in Nablus, he moved between his aunt's house and his friend's house.

In 2005, Ghanim went back to Silt al Thaher to visit his family after Ramadan. He was at his family's house on November 17, 2005, when the Israeli military used the home to conduct an operation that resulted in one of the Brigade leaders being killed. Ghanim went to hide at his uncle's house down the street. On December 6, 2005, another group entered his family's home in the middle of the night. They were looking for Ghanim, repeating that they wanted to kill him. They took his family outside while they fired shots up in the air and at the walls of the house. They set part of the house and the family's two cars on fire. Ghanim's father had a heart attack while outside, and, although the family took him to the hospital after the group left, he died. Ghanim went to his father's funeral, which was at his uncle's house. Ghanim testifed that he fears returning to the Palestinian Territories and that his family tells him that the Brigade still comes to the family's house looking for him.

In an oral decision delivered at the hearing on August 19, 2008, the IJ denied Ghanim's application for asylum, withholding of removal under the INA, and protection under the CAT. The IJ first noted that Ghanim failed to obtain any corroboration to support his testimony. The IJ stated

4

that Ghanim's "failure to corroborate causes the Court to not give full probative value to his testimony because, frankly, some of it is implausible"; however, the IJ also stated that he was "not going to find the respondent to be completely incredible." A.R. at 40 (IJ Op. at 8). With respect to Ghanim's credibility, the IJ further stated, "I do not think [Ghanim] is exactly lying, but I am certainly not convinced that every part of his story is true. But for the rest of this decision, I will assume that basically it is true; that he was warned to stay off the roof, and that the Israeli army used the roof of his house to attack the terroritsts." *Id.* Assuming this testimony as true, the IJ then concluded that, although the Brigade was "certainly brutal with [Ghanim]," the events did not constitute past persecution. *Id.* at 40–41 (IJ Op. at 8–9). Later in its decision, the IJ stated that "the fact that [Ghanim's] family was not harmed, even though their property was, may indicate that al-Aqsa was not all that anxious to kill anyone at the time." *Id.* at 43 (IJ Op. at 11). The IJ further noted that Ghanim's delay in leaving the country for a year and a half after the Brigade thought he was a spy "weakens the case for past persecution." *Id.*

The IJ questioned whether the Brigade really thought Ghanim was spying for Israel, reasoning that they would have killed Ghanim and would not have offered him money to join their group. The IJ also reasoned that, even if the Brigade did believe that Ghanim was spying on them for Israel and sought to kill him, Ghanim could be safe in other places within the Palestinian Territories. The IJ noted that the Brigade has looked for him only at the family's home and that Ghanim lived safely with his uncle down the street from the family home, with his aunt in Nablus,

and with his friend.  The IJ indicated that the potential threat in the future from the past events would be less given the time that has passed since they occurred.

Finally, the IJ concluded that "the real problem with [Ghanim's] case is there is no nexus to one of the five factors for which refugee status can be granted." *Id.* at 42 (IJ Op. at 10).  The IJ stated that the Brigade believed that Ghanim was spying, which the IJ stated is not a political opinion.  The IJ reasoned that Ghanim "never had any political opinion" and that spying for Israel "appears to be getting involved in the military situation which makes him a combatant, not a political person." *Id.* at 43 (IJ Op. at 11).  The IJ thus denied Ghanim's application for asylum and withholding of removal under the INA.

The IJ also denied Ghanim's application for protection under the CAT, finding that Ghanim did not demonstrate that any group wishes to torture him and that even if the Brigade does wish to do so, it "is not a group that operates with the consent, acquiescence, or wilful blindness of the government of Palestine or with the government of Israel." *Id.* at 44 (IJ Op. at 12).  The IJ stated that, although there is evidence of gross, flagrant, or mass violations of human rights in the Palestinian Territories, Ghanim did not provide evidence of past torture and there is evidence that he could relocate safely to another area within the Territories.  The IJ ordered Ghanim removed to Palestine, or in the alternative to Israel.

Ghanim timely appealed the IJ's decision, and, on February 24, 2010, the BIA dismissed Ghanim's appeal.  It concluded that Ghanim failed to meet his burden of proving the events underlying his claim of past persecution because he failed to present corroboration and did not allege

6

that corroboration was not reasonably available. *Id.* at 2 (BIA Op. at 1). The BIA agreed with the IJ's finding that it is reasonable for Ghanim to avoid persecution by relocating within the Palestinian Territories upon his return. *Id.* at 3 (BIA Op. at 2). Relying on its conclusions regarding corroboration and relocation, the BIA declined to address the IJ's decision with respect to nexus. The BIA also agreed with the IJ that Ghanim had not established that he would more likely than not be tortured upon return to Palestine. *Id.*

Ghanim filed a timely petition for review, and, on May 18, 2010, we granted Ghanim's motion to stay his removal pending disposition of this petition.

## II. ANALYSIS

### A. Standard of Review

When, as here, "the BIA reviews the [IJ's] decision and issues a separate opinion, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination. To the extent the BIA adopted the [IJ's] reasoning, however, [we] also review[] the [IJ's] decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citation omitted). Our review of the IJ's and BIA's factual findings is limited by the substantial-evidence standard of review. *Id.* Under this deferential standard, we must uphold the IJ's and BIA's factual determinations "unless evidence 'not only supports a contrary conclusion, but indeed *compels* it.'" *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004) (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)). In other words, "[w]e defer to the administrative findings of fact except when 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th

Cir. 2006) (quoting 8 U.S.C. § 1252(b)(4)(B)); *accord Yu*, 364 F.3d at 702–03 (explaining that

§ 1252(b)(4)(B) "basically codifies the Supreme Court's substantial evidence standard" in *INS v.*

*Elias-Zacarias*, 502 U.S. 478, 481 (1992), which was based on the now-repealed statute 8 U.S.C.

§ 1105a(a)(4)). "Questions of law and constitutional questions are subject to de novo review, with

deference to the BIA's reasonable interpretation of the statutes and regulations." *Lin v. Holder*, 565

F.3d 971, 976 (6th Cir. 2009).

**B. Asylum**

The Secretary of Homeland Security or the Attorney General has discretion to grant asylum

to an alien who is a "refugee," 8 U.S.C. § 1158(b)(1)(A), which is defined as an alien "who is unable

or unwilling to return to" his home country "because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion," 8 U.S.C. § 1101(a)(42)(A). Ghanim bears the burden of establishing that he is

a "refugee." 8 C.F.R. § 1208.13(a). The IJ and BIA concluded that Ghanim did not establish past

persecution, and, because Ghanim does not appeal this determination, he bears the burden of

establishing that his fear of persecution is well-founded. *Id.* § 1208.13(b)(1). The IJ and BIA

concluded that Ghanim failed to establish a well-founded fear of persecution because it is reasonable

to expect Ghanim to relocate within the Palestinian Territories to avoid persecution.

"[A]n individual who can relocate safely within his home country ordinarily cannot qualify

for asylum here." *INS v. Ventura*, 537 U.S. 12, 18 (2002). "An applicant does not have a well-

founded fear of persecution if the applicant could avoid persecution by relocating to another part of

the applicant's country of nationality . . . if under all the circumstances it would be reasonable to expect the applicant to do so."  8 C.F.R. § 1208.13(b)(2)(ii).  To determine the reasonableness of internal relocation, the IJ "should consider, but [is] not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties."  *Id.* § 1208.13(b)(3).  These factors, if relevant based on the circumstances of the individual case, "are not necessarily determinative of whether it would be reasonable for the applicant to relocate."  *Id.* Because Ghanim has not established past persecution and does not argue that the persecution is by the government or is government-sponsored,[2] Ghanim bears the burden of establishing that it is not reasonable for him to relocate. *Id.* § 1208.13(b)(3)(i)–(ii); *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 n.6 (6th Cir. 2010); *Vata v. Gonzales*, 243 F. App'x 930, 939 (6th Cir. 2007) (unpublished decision).

---

[2]If the persecution is by the government or government-sponsored, internal relocation is presumed unreasonable and the burden shifts to the government to establish by a preponderance of the evidence that relocation would be reasonable. 8 C.F.R. § 1208.13(b)(3)(ii). Neither the BIA nor the IJ stated in its relocation analysis whether it considered the Brigade's actions as government sponsored, although, as discussed below, the IJ concluded in the context of Ghanim's CAT claim that the Brigade "is not a group that operates with the consent, acquiescence or wilful blindness of the government of Palestine or with the government of Israel." A.R. at 44 (IJ Op. at 12). Ghanim does not argue on appeal that the persecution is government-sponsored or that the presumption of reasonableness should apply. *See Vushaj v. Holder*, 389 F. App'x 512, 513 n.2 (6th Cir. 2010) (unpublished decision) (citing *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007)) ("[B]ecause [petitioner] failed to raise the issue on this appeal, she has waived it.").

Ghanim argues that it is unreasonable for him to relocate safely within the Palestinian Territories because the geographic area is small, there is ongoing civil strife, and it is difficult to travel within the area because of checkpoints. He also disputes the IJ's and BIA's reliance on the fact that he previously sought refuge at his aunt's house because that occurred prior to the Israeli raid from Ghanim's family home. Additionally, he argues that there is no reason to believe that he could relocate to Israel because he did not actually collaborate with Israel.

Ghanim's arguments with respect to the limited geographic area, the ongoing civil strife, and the difficulty of travel are proper considerations in the determination of whether it is reasonable for him to relocate within the Palestinian Territories. *See* 8 C.F.R. § 1208.13(b)(3). These factors weigh against the reasonableness of relocation; nevertheless, the factors are not necessarily determinative. *Id.* Moreover, even accepting Ghanim's argument that he stayed with his aunt in Nablus before the Israeli raid, Ghanim stayed with his uncle—down the street from his family's home—immediately after the raid for two months before he came to the United States. Ghanim has not explained why he was able to stay safely with his uncle for that two-month period, or provided evidence or testimony that the Brigade has looked for him anywhere other than his family's home. We cannot conclude that the evidence compels the conclusion that Ghanim has demonstrated that it is unreasonable for him to relocate within the Palestinian Territories to avoid persecution. *See Fisenko v. Holder*, 336 F. App'x 504, 516–17 (6th Cir. 2009) (unpublished decision), *cert. denied*, 130 S. Ct. 2111 (2010). Accordingly, we cannot conclude that the evidence compels the conclusion that Ghanim established a well-founded fear of persecution.

Because we deny Ghanim's petition for review on the BIA's alternative holding that Ghanim did not demonstrate past persecution and that it is reasonable to expect that he could relocate to another area within the Palestinian Territories to avoid persecution, we need not address the issue of whether the BIA erred in concluding that Ghanim waived the issue of corroboration.[3]

**C. Withholding of Removal under the INA**

To qualify for withholding of removal, Ghanim must demonstrate "that there is a clear probability," *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (internal quotation marks omitted), or in other words, that "it is more likely than not," 8 C.F.R. § 1208.16(b)(2), that he would be persecuted on the basis of the same five grounds necessary for asylum if he is removed from this country. *See* 8 U.S.C. § 1231(b)(3); *Cruz-Samayoa*, 607 F.3d at 1151. The burden when seeking withholding of removal is more onerous than that required when seeking asylum; thus because Ghanim failed to establish his eligibility for asylum, he necessarily failed to establish his eligibility for withholding of removal under the INA. *See Lin*, 565 F.3d at 979.

---

[3]We note that the administrative record includes a copy of the death certificate for Ghanim's father, which states that he died on December 6, 2005. A.R. at 184 (Death Certificate). This evidence is not mentioned by the IJ or the BIA in their discussions of corroboration. Additionally, because the BIA declined to address the IJ's conclusion with respect to nexus, we do not pass upon the issue here. *See Ventura*, 537 U.S. at 16 ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands."). We note, however, as we did in the order granting Ghanim's motion to stay his removal, that the IJ's conclusion is called into question by a recent published decision from this Circuit, *Haider v. Holder*, 595 F.3d 276, 284–85 (6th Cir. 2010).

**D. Protection under the CAT**

To qualify for protection under the CAT, Ghanim bears the burden of establishing "that it is more likely than not that he . . . would be tortured if removed to" the Palestinian Territories. 8 C.F.R. § 1208.16(c)(2). In contrast to asylum and withholding of removal under the INA, Ghanim "need not show that the harm [he] faces is based on one of the five grounds (race, religion, nationality, social group, political opinion) required under the INA, but rather must establish a 'particularized threat of torture.'" *Almuhtaseb*, 453 F.3d at 751 (quoting *Castellano-Chacon v. INS*, 341 F.3d 533, 551 (6th Cir. 2003)). "The term 'torture' only describes 'an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(2)).

Ghanim relies on the Department of State's country report included in the administrative record that relates the Palestinian Authority's poor human rights record,[4] including poor prison

---

[4]As we noted above, the IJ concluded that "even if [the Brigade] does wish to torture [Ghanim], that is not a group that operates with the consent, acquiescence or wilful blindness of the government of Palestine or with the government of Israel." A.R. at 44 (IJ Op. at 12). The government acknowledges that the Brigade is "affiliated with a Palestinian movement led by former leader Yasir Arafat," Appellee Br. at 23 (citing A.R. at 228 (Council on Foreign Relations 2005 Backgrounder on the Al-Aqsa Martyrs Brigades)), but argues that "[t]his connection between [the Brigade] and the Palestinian Authority . . . is by itself insufficient to compel the conclusion that Ghanim would be tortured by or with acquiescence of any government official," *id.* We note that the Council on Foreign Relations also reported in 2005 that "Palestinian officials have said most of the [Brigade's] members are on the payroll of the Palestinian Authority, often because they serve in both the brigades and in one of the fourteen formal security services." A.R. at 229 (Council on Foreign Relations 2005 Backgrounder on the Al-Aqsa Martyrs Brigades). Ghanim does not appeal the IJ's finding; nevertheless we need not rely on the IJ's finding to reject Ghanim's CAT claim because there is substantial evidence supporting the IJ's and BIA's conclusion that Ghanim "has not shown that any group wishes to torture him." A.R. at 44 (IJ Op. at 12).

conditions, arbitrary arrests and prolonged detentions, and prisoner deaths under ambiguous circumstances. Appellant Br. at 12 (citing A.R. at 147–48 (State Dep't Country Report at 25–26)). Ghanim argues that he has established, based on the events credited as true by the IJ, that "he more likely than not [will] suffer a similar fate as those similarly situated to him who are described" in the country report. *Id.*

Relying on the factors in *Almuhtaseb*, 453 F.3d at 751, and 8 C.F.R. § 1208.16(c)(3), the IJ explained that, although there is evidence of gross, flagrant, or mass violations of human rights in the Palestinian Territories, Ghanim did not provide evidence of past torture and there is evidence that he could relocate safely to another area within the Territories. The BIA agreed with the IJ, concluding that "even considering the background documentary evidence of record, [Ghanim] has not established that he would more likely than not be tortured upon his return to" the Palestinian Territories. A.R. at 3 (BIA Op. at 2) (citing IJ Op. at 12). There is substantial evidence supporting the IJ's and BIA's determination. The past events that the IJ assumed as true do not constitute evidence of past torture—"an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2). To the extent that these events—geographically localized at his family's home in Silt al Thaher—suggest that Ghanim has a higher or more particularized risk of being subject to the human rights violations recognized in the Department of State's country report, that risk is lessened by the evidence that Ghanim could relocate safely within the Palestinian Territories. Taken alone, the human rights violations reported by the Department of State do not establish that it is more likely than not that Ghanim himself would be tortured upon return to the Palestinian Territories. *See Cruz-*

13

*Samayoa*, 607 F.3d at 1156; *Almuhtaseb*, 453 F.3d at 751. We cannot conclude that the evidence compels the conclusion that Ghanim more likely than not would be tortured upon his return, and therefore we must reject his claim for protection under the CAT.

### III. CONCLUSION

Because Ghanim does not appeal the IJ's and BIA's determination that he did not establish past persecution and because the evidence does not compel the conclusion that Ghanim established that it is unreasonable for him to relocate safely within the Palestinian Territories, Ghanim failed to establish that he qualifies for asylum or withholding of removal under the INA. Ghanim's CAT claim also fails because the evidence does not compel the conclusion that it is more likely than not that he will be tortured upon removal to the Palestinian Territories. Accordingly, we **DENY** Ghanim's petition for review.