RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ELIZABETH CRISTALES-DE LINARES; DANIELA VALENTINA CRISTALES-DE LINARES; KEIRY TATIANA CALDERON-CRISTALES,

　　　　　　　　　*Petitioners*,

*v.*

PAMELA BONDI, Attorney General,

　　　　　　　　　*Respondent*.

⎤
⎟
⎟
⎟
⎟
⎬　No. 25-3152
⎟
⎟
⎟
⎟
⎦

─────────────────

On Petition for Review from the Board of Immigration Appeals.
Nos. A 209 440 368; A 209 440 369; A 209 440 370.

Decided and Filed:  December 1, 2025

Before:  GRIFFIN, THAPAR, and HERMANDORFER, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Russell Reid Abrutyn, ABRUTYN LAW PLLC, Southfield, Michigan, for Petitioners.  C. Frederick Sheffield, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  Karen Musalo, CENTER FOR GENDER & REFUGEE STUDIES, San Francisco, California, for Amicus Curiae.

─────────────────

**OPINION**

─────────────────

HERMANDORFER, Circuit Judge.  Elizabeth Cristales-de Linares, a native and citizen of El Salvador, was denied a U.S. visitor visa.  Two months later, she entered the United States illegally along with her two daughters.  At a later removal hearing, Cristales-de Linares sought asylum, withholding of removal, and protection under the Convention Against Torture.

She asserted fears that, if removed to El Salvador, men potentially associated with an unknown gang would target her because she is a Salvadoran woman and a business owner. The immigration judge denied her application. The Board of Immigration Appeals affirmed. Because Cristales-de Linares failed to establish that she qualifies for the relief she seeks, we deny the petition.

I

Petitioners Elizabeth Cristales-de Linares and her two daughters are natives and citizens of El Salvador. Each was placed into removal proceedings after unlawfully entering the United States in October 2016. Through counsel, all conceded removability. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Cristales-de Linares then applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). She included her daughters—both minors at the time—as derivative beneficiaries. *Id.* § 1158(b)(3). Neither daughter sought relief independently.[1]

Cristales-de Linares's claims centered on her time as a salon owner in El Salvador. She asserted, among other things, that she was a member of a particular social group (PSG) subject to persecution by gangs in her home country. *See* 8 U.S.C. § 1101(a)(42); *id.* § 1231(b)(3)(A). Cristales-de Linares based her application on two proposed PSGs: "Salvadoran women" and "single Salvadoran women who are working professionals." A.R. 4, 105.

In November 2019, an immigration judge (IJ) held a hearing on Cristales-de Linares's application. Cristales-de Linares testified that, before coming to the United States, she lived in Santa Ana, El Salvador with her daughters. Before her time in Santa Ana, Cristales-de Linares had for years resided in San Salvador. Her husband, who has temporary protected status in the United States, visited his family once or twice a year and planned to permanently relocate to El Salvador.

---

[1]We have held that withholding-of-removal claims do not allow derivative beneficiaries, *see Kukalo v. Holder*, 744 F.3d 395, 401 n.1 (6th Cir. 2011), and said the same about CAT protections in unpublished decisions, *see, e.g.*, *Sica Ixcoy v. Holder*, 439 F. App'x 524, 528-29 (6th Cir. 2011) (collecting authorities). Regardless, the daughters press no argument separate from Cristales-de Linares's application. So we refer only to that application throughout.

Cristales-de Linares testified that she opened her own beauty salon in 2012. For two years she operated the salon without incident. Then, in mid-2014, Cristales-de Linares claims she was approached by individuals she assumed to be gang members, though they never identified themselves as such. She testified that these men demanded that she "collaborate with them" by making regular "rent" payments—an arrangement she saw as a normal part of doing business in El Salvador. A.R. 115, 118. For the next two years, Cristales-de Linares made regular payments—about $25 a week—without telling her husband or law enforcement. At times, the men collecting her payments would bring their wives for free haircuts. The men never gave Cristales-de Linares any trouble otherwise.

Cristales-de Linares says that changed when she stopped making payments in 2016. About two months later, three men entered her shop, threatened her with a gun, and demanded $5,000 in retaliation for the missed "rent." A.R. 121. Cristales-de Linares explained that she didn't have cash on hand. The men then left—but not before making veiled threats towards her and her daughters. Cristales-de Linares testified that the incident prompted her to seek advice from a police officer she knew in a nearby town. The officer allegedly suggested that she leave the country. Cristales-de Linares did just that, taking her daughters and traveling through Guatemala, Belize, and Mexico before arriving in the United States in late 2016.

At the removal hearing, Cristales-de Linares stated that she feared returning to El Salvador because the men to whom she paid "rent" might kill her or kidnap one of her daughters. When asked if she could relocate elsewhere in the country—including the capital, where she lived for many years—Cristales-de Linares claimed the extortionists were part of a criminal organization that could find her anywhere. Yet she admitted that she had no information to confirm that the men belonged to an organization, let alone which organization might be involved. Her speculation about the men was instead based on "how they looked" and their mention of a "boss." A.R. 139.

In February 2020, the IJ issued an oral decision denying Cristales-de Linares's application. The IJ first determined that Cristales-de Linares was not credible and failed to submit sufficient evidence to corroborate her claims. It then identified two reasons why her asylum claim failed on the merits. *First*, her particular social groups were not cognizable under

the Immigration and Nationality Act (INA) because they were "overbroad and not socially salient." A.R. 79. In reaching its decision, the IJ considered the two social groups in Cristales-de Linares's application—"Salvadoran women" and "single Salvadoran women who are working professionals"—and added a third based on her testimony: "salon owners," later refined to "salon owners in El Salvador." A.R. 4, 79. *Second*, the IJ held that Cristales-de Linares failed to show that she could not reasonably relocate within El Salvador to avoid future persecution. Having found Cristales-de Linares ineligible for asylum, the IJ concluded that she necessarily failed the more stringent standard for withholding of removal. Finally, the IJ denied Cristales-de Linares's CAT claim because she failed to show that she would face a particularized threat of torture committed by or at the acquiescence of El Salvadoran officials.

Cristales-de Linares timely appealed to the Board of Immigration Appeals, which upheld the IJ's decision. With respect to the asylum claim, the Board affirmed the IJ's alternative holdings that Cristales-de Linares failed to show (i) membership in a cognizable PSG and (ii) an inability to relocate to a different part of El Salvador. The Board agreed that its asylum analysis also required rejecting Cristales-de Linares's request for withholding of removal. And it affirmed the IJ's denial of relief under CAT applying the clearly erroneous standard. This petition for review followed.

II

We have jurisdiction to review the Board's denial of Cristales-de Linares's application. *Singh v. Ashcroft*, 398 F.3d 396, 400 (6th Cir. 2005); 8 U.S.C. § 1252(a)(1). When the Board issues its own decision but agrees with the IJ's reasoning, we focus our review on the Board's decision and examine the IJ's decision to the extent the Board adopted it. *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). De novo review applies to questions of law—including whether a PSG is legally cognizable. *Reyes Galeana v. Garland*, 94 F.4th 555, 558 (6th Cir. 2024). We review the agency's factual findings for substantial evidence and may not reverse "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III

Cristales-de Linares first challenges the Board's resolution of her asylum and withholding-of-removal claims. She primarily argues that her proposed PSGs—"Salvadoran women," "single Salvadoran women who are working professionals," and "salon owners in El Salvador"—are cognizable for purposes of securing relief. Cristales-de Linares Br. 24. She further contests the Board's internal-relocation analysis. Cristales-de Linares then raises several peripheral challenges to the agency's handling of her claims. None of her arguments prevails.

A

Before addressing Cristales-de Linares's contentions, we briefly set out the relevant legal standards for evaluating asylum and withholding-of-removal claims.

*Asylum*. Only refugees are eligible for asylum. By statute, a "refugee" is an individual "unable or unwilling to return to" her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Cristales-de Linares's asylum application relies on her asserted membership in several PSGs. She bears the burden of establishing that her proposed groups are legally cognizable. 8 U.S.C. § 1158(b)(1)(B)(i). When a PSG involves "underlying" factual determinations, like group size or composition, those findings are subject to substantial-evidence review. *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023).

Identifying a cognizable PSG is necessary for asylum relief. But it is not sufficient to prevail. The statute also requires past persecution or a well-founded fear of future persecution based on the PSG asserted. 8 U.S.C. § 1101(a)(42). An applicant lacks a well-founded fear of persecution if she "could avoid persecution by relocating to another part of [her] country of nationality." 8 C.F.R. § 1208.13(b)(2)(ii). Internal relocation must be reasonable based on the "totality of the relevant circumstances." *Id.* § 1208.13(b)(3). The reasonableness inquiry is a factual determination subject to substantial-evidence review. *Juan Antonio v. Barr*, 959 F.3d 778, 796-97 (6th Cir. 2020).

*Withholding of Removal.*  Withholding of removal requires an applicant to demonstrate that her "life or freedom would be threatened" because of her "race, religion, nationality, membership in a particular social group, or political opinion."   8 U.S.C. § 1231(b)(3)(A); *Vasquez-Rivera v. Garland*, 96 F.4th 903, 907 (6th Cir. 2024).  So an applicant who is unable to show persecution on account of one of those grounds cannot qualify for either asylum or withholding.  Beyond that, withholding of removal has a higher bar for proving persecution than does an asylum claim.  *Vasquez-Rivera*, 96 F.4th at 907-08.  An applicant must demonstrate a "*clear probability*"—not just a likelihood—that her "life or freedom would be threatened" upon removal.  *Id.* (citation omitted) (emphasis added).  An applicant's reasonable ability to relocate within her country of origin defeats that showing.  8 C.F.R. § 1208.16(b)(1)(i)(B), (b)(2).  An applicant who fails asylum's "well-founded fear" standard necessarily fails to qualify for withholding of removal.  *Vasquez-Rivera*, 96 F.4th at 908.

B

Cristales-de Linares first argues that all three groups she presented to the Board— Salvadoran women, single Salvadoran women who are working professionals, and salon owners in El Salvador—qualify as PSGs entitled to the protections of asylum and withholding of removal.  The IJ and the Board disagreed with Cristales-de Linares, and so do we.

1

To secure protection based on membership in a PSG, a "petitioner must show that [her] proposed group (1) shares a common immutable characteristic other than the fact that it is targeted for persecution; (2) is particular and defined with sufficient precision to delimit its membership; and (3) is socially distinct such that members of the group are perceived as a group by society." *Mateo-Esteban v. Garland*, 125 F.4th 762, 766-67 (6th Cir. 2025).

The Board concluded that Cristales-de Linares's proffered groups were not cognizable. Based on its precedent and ours, the Board held that two of Cristales-de Linares's groups— "Salvadoran women" and "single Salvadoran women who are working professionals"—are too "amorphous, overbroad, diffuse, or subjective" to satisfy the particularity requirement.  A.R. 4 (citation omitted).  The Board then summarily rejected her third proffered PSG—"salon owners

in El Salvador"—as foreclosed by our precedent.  *Id.* (citing *Khozhaynova v. Holder*, 641 F.3d 187 (6th Cir. 2011)).

Cristales-de Linares sees "particularity" as a lower bar; in her view, it requires nothing more than an ability to determine "who is in and out of the group."  Cristales-de Linares Br. 27; *see also* Ctr. for Gender & Refugee Stud. Amicus Br. (Ctr. Br.) 10.  She says the group "Salvadoran women" thus clears the particularity hurdle because it straightforwardly defines all women from El Salvador as "in."

That sweeping view of particularity does not square with this Court's caselaw.[2]  Instead, we have long understood particularity to require more than an ability to determine who falls within a given group.  *See Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (collecting cases); *cf. Cabrera-Hernandez v. Bondi*, No. 25-3123, 2025 WL 2940692, at *2 (6th Cir. Oct. 16, 2025) (noting "the particularity determination does not rest on descriptive clarity alone").  Particularity also requires some "unifying relationship or characteristic narrowing th[e] group."  *Reyes Galeana*, 94 F.4th at 559.  When that relationship or characteristic isn't narrow enough, it yields a group that is "too broad to satisfy the particularity rule."  *Id.*  Consistent with that understanding, our published precedents instruct that "generalized and far-reaching" classifications are insufficiently particular to qualify for PSG-based protection.  *Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011); *accord Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005).

Those standards have led us to routinely reject groups based on expansive demographic categories.  Such groups, we've explained, are too "far-reaching" and diverse to be considered particular.  *Kante*, 634 F.3d at 327.  Examples include cases rejecting the groups "young male Guatemalans," *Aguilar-Mejia v. Bondi*, No. 22-3365, 2025 WL 2337021, at *2 (6th Cir. Aug. 13,

---

[2]Cristales-de Linares accepts and applies our caselaw's existing framework in her opening brief.  The Government responded on those terms.  It's not until her reply brief that Cristales-de Linares suggests our approach may warrant "revisit[ing]" (without offering any de novo statutory analysis).  Reply Br. 5.  Under our forfeiture rules, that new argument comes too late to preserve a request to overrule decades' worth of cases.  *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019).  Nor would that tack necessarily favor Cristales-de Linares in any event.  *Cf. Perez-Zenteno v. Att'y Gen.*, 913 F.3d 1301, 1310-11 (11th Cir. 2019) (evaluating the statute de novo and concluding that "[b]ased on the plain language of the statute, its logic, and common sense," PSGs must be "narrowly defined" and possess factors like "immutability, identity, visibility, homogeneity, and cohesiveness").

2025); "Guatemalan children under fourteen," *Gomez-Guzman v. Holder*, 485 F. App'x 64, 66-67 (6th Cir. 2012); and "young women," *Paplekaj v. Holder*, 411 F. App'x 844, 846 (6th Cir. 2011); *see also Cabrera-Hernandez*, 2025 WL 2940692, at *2 (collecting cases).

We've similarly declined recognition of groups that could seem narrow on their face, but whose application risks sweeping in broad demographics. For instance, we've held that a proposed PSG of "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" fails "because it could include all Salvadoran youth who are not members of the MS gang." *Umaña-Ramos*, 724 F.3d at 673-74. The same went for "young, attractive Albanian women," which would encompass "any young Albanian woman who possesses the subjective criterion of being 'attractive.'" *Rreshpja*, 420 F.3d at 556. Nor could the group "children who are unable to leave their families" be a PSG because it rests on a "near-universal fact of childhood," capturing virtually all children. *Orellana v. Sessions*, 722 F. App'x 443, 449 (6th Cir. 2018). Likewise, "Guatemalans afraid of kidnapping" and "women who oppose gangs" are not cognizable PSGs because those groups "would encompass nearly all segments of the population." *Juan-Mateo v. Sessions*, 729 F. App'x 446, 447 (6th Cir. 2018) (citation omitted).

These same rationales have twice led us to reject proposed PSGs defined by gender and nationality. Though these opinions are unpublished, they illustrate how our standards for evaluating PSGs play out in practice. In *Rodriguez-Lopez v. Garland*, No. 20-4087, 2021 WL 3140324, at *4 (6th Cir. July 26, 2021), we concluded that neither "Guatemalan women" nor "indigent Guatemalan women" were cognizable PSGs after observing that both were "more expansive than many of the groups previously rejected by this court." Just recently, in *Cabrera-Hernandez*, 2025 WL 2940692, at *2, we concluded that a PSG of "Honduran women" was not cognizable because it "sweep[s] over large, diverse swaths of the population." Other circuits have reasoned similarly.[3]

---

[3]*Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 146 (3d Cir. 2021) ("'Guatemalan women' is not a cognizable PSG."); *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991) ("[G]ender will not by itself endow individuals with membership in a particular group."); *Jaco v. Garland*, 24 F.4th 395, 407 (5th Cir. 2021) ("Honduran women" is not particular); *Safaie v. INS*, 25 F.3d 636, 640 (8th Cir. 1994), *superseded by statute on other grounds* ("Iranian women" is not a cognizable PSG); *Amezcua-Preciado v. Att'y Gen.*, 943 F.3d 1337, 1344-45 (11th Cir. 2019) ("[T]he immutable characteristic of being women . . . alone is insufficient" to make a cognizable PSG).

So too, we have denied PSG status to groups that revolve around occupations, economic activity, "perceived wealth," or "perceived . . . access to funds." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (citation omitted); *Gonzalez-De Leon v. Barr*, 932 F.3d 489, 493 (6th Cir. 2019). Economic-based groups, we've explained, are often "neither discrete nor definable" because they capture individuals working across diverse positions, industries, and geographic locations. *Reyes Galeana*, 94 F.4th at 559. Examples include cases rejecting the groups "Mexican business owners," *id.*; "taxi drivers in Guatemala," *Gonzalez-De Leon*, 932 F.3d at 493; "business owners who refuse[] to pay for protection from the mafia," *Khozhaynova*, 641 F.3d at 195; "small businessmen," *Jelkovski v. INS*, 103 F. App'x 578, 579 (6th Cir. 2004); "female home or business owners," *Mendez v. Sessions*, No. 17-3148, 2017 U.S. App. LEXIS 22256, at *8 (6th Cir. Nov. 6, 2017); and "upwardly mobile women trying to build a better life through business," *id.*

We need not fashion an exhaustive judicial definition of "particular social group" that would govern beyond those groups proposed here. We simply conclude that our caselaw requires a far more robust showing than Cristales-de Linares contends.

2

The above principles require rejecting each of Cristales-de Linares's proffered PSGs.

*Salvadoran Women.* Groups including all country members of a particular age or sex generally encompass large, diverse portions of the population and thus fail the particularity requirement. *See supra* pp. 7-8. So it is with Cristales-de Linares's proposed group comprising all "Salvadoran women." Such a group contains roughly half the country. It sweeps in millions of women across varied social, economic, religious, and cultural backgrounds. Indeed, the group stretches even further than groups—like "young male Guatemalans," "women who oppose gangs" in Guatemala, and "young, attractive Albanian women"—that we have previously deemed too broad to qualify for protection. *See supra* pp. 7-8 (collecting cases). We agree with the Board that a such a broad and diverse cohort of the population does not constitute a cognizable PSG under this Court's framework.

*Single Salvadoran Women Who Are Working Professionals*.  The Board also rejected Cristales-de Linares's next group, which adds the "single" and "working professionals" qualifiers to her first PSG, as insufficiently particular.  Again, we agree.

Cristales-de Linares sees her group as narrower than others we have recently rejected, such as "Mexican business owners." *Reyes Galeana*, 94 F.4th at 559.  But she offers nothing to show that "single Salvadoran women working as professionals," Cristales-de Linares Br. 31, "would be recognized" as "a discrete class of persons," *Umaña-Ramos*, 724 F.3d at 674 (citation omitted).  "Salvadoran working professional women" includes women of every age, in every occupation and trade, at all skill levels, working any number of hours, and in every region of El Salvador.  A group covering every woman "who has ventured into the [Salvadoran] marketplace" is not particular.  *Reyes Galeana*, 94 F.4th at 559 (quotation marks omitted).  Nor does the qualifier "single" firm up the definition:  It apparently covers women who are married with the potential for male protection, like Cristales-de Linares.  Particularity does not permit such malleable boundaries, *see Rreshpja*, 420 F.3d at 556, even under Cristales-de Linares's and her amicus's account, Ctr. Br. 9 ("subjective" group definitions not permitted); Cristales-de Linares Br. 27 (same).  Overall, each component of this group—"women," "working professionals," and "single"—is overly broad, and they fare no better when combined.

In practice, the key characteristic underlying Cristales-de Linares's proposed working-professionals group is "perceived wealth" or access to money.  *Sanchez-Robles*, 808 F.3d at 692.  Yet groups premised on a risk "of persecution for economic gain" are not cognizable under the INA.  *Id.*  Cristales-de Linares's testimony helps show why:  She described indiscriminate economic extortion in El Salvador targeting everyone from "the guy who sells popsicles" to "an old lady selling bread in a park."  A.R. 132-33.  Understood this way, her PSG is premised on a fear of general crime that affects anyone with real or perceived economic resources.  Nothing meaningfully distinguishes that amorphous cross-section of society from others we have already rejected.  *See Sanchez-Robles*, 808 F.3d at 692 (collecting cases).

*Salon Owners in El Salvador*.  Cristales-de Linares believes her final group is sufficiently narrow because it covers just one type of business.  But salon owners are indistinguishable from other professional groups—like "taxi drivers in Guatemala," "small businessmen," and "female

home or business owners"—that we have rejected because they lack adequate narrowing characteristics.  *See supra* p. 9 (collecting cases).  Cristales-de Linares does not engage with these precedents or give us any reason to set salon owners apart from those operating other kinds of businesses.  In fact, she admits that changing her occupation would be meaningless because every Salvadoran is subject to the same demands.  This shows that, at base, her salon-owner group is also tied to "perceived wealth or a ready access to money."  *Lorenzana-Montepeque v. Barr*, 781 F. App'x 490, 493 (6th Cir. 2019).  As discussed, the INA does not cover such classifications.

3

Cristales-de Linares's remaining counterarguments do not persuade.

*Alternative Particular Social Groups*.  On appeal, Cristales-de Linares unveils two new proposed PSGs she says the agency was obliged to consider sua sponte: "single Salvadoran women small business owners" and "single Salvadoran women salon owners."  Cristales-de Linares Br. 31, 33.  Citing our decision in *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487 (6th Cir. 2024), she contends that the agency cannot limit its asylum or withholding analysis to an applicant's proposed PSGs.  Instead, in her view, the IJ and the Board have an affirmative obligation to search the record for "a better defined group."  Cristales-de Linares Br. 32.

We disagree that *Tista-Ruiz de Ajualip* obliges the agency to hunt for new, unraised grounds for relief.  That case instead faulted a particular decision of the Board for analysis that rested on a "boilerplate invocation of circularity" that "was not premised on any evidence in the record" and "was in direct conflict with our own precedent, current immigration authority, and the caselaw in other circuits."  114 F.4th at 503.  We then remanded so that the agency could properly tie its PSG discussion to the facts.  *Id.* at 508.  Nothing in *Tista-Ruiz de Ajualip* requires the agency to craft a new PSG or mix and match elements of a petitioner's existing groups.  *See id.* at 503-04.  That case instead stands for the straightforward rule that the Board must analyze the groups actually proposed and cannot "wholly disregard the record" when rendering decision.  *Id.* at 504.  Here, the Board fulfilled its obligations by assessing "the plausibility of

[Cristales-de Linares's] application on the *record as a whole*." *Id.* at 498 (quoting *Zometa-Orellana v. Garland*, 19 F.4th 970, 979 (6th Cir. 2021)).

*Broader PSG Cases.* Cristales-de Linares and her amicus identify a handful of our decisions that they read to require recognizing her PSGs. We disagree that those precedents cut against our conclusion. Instead, the cited cases either (1) assumed without deciding that an unchallenged group was cognizable, *Juan Antonio*, 959 F.3d at 790-91; (2) declined to consider a PSG on exhaustion grounds, *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 666 (6th Cir. 2024); or (3) remanded to the Board after only addressing one PSG element, *Turcios-Flores*, 67 F.4th at 356-57. None affects our analysis today. The same goes for some of our other cases that might facially gesture at broad PSGs. *See, e.g.*, *Sabastian-Andres v. Garland*, 96 F.4th 923, 931 (6th Cir. 2024) (decided on nexus grounds); *Amaya-Hernandez v. Garland*, No. 21-3704, 2022 WL 1112771, at *2-3 (6th Cir. Apr. 14, 2022) (same); *Zuniga-Martinez v. Garland*, No. 21-3312, 2022 WL 2160668, at *5 (6th Cir. June 15, 2022) (same).

*Recent Board Precedent.* During the pendency of Cristales-de Linares's appeal, the Board published *Matter of K-E-S-G-*, 29 I. & N. Dec. 145 (BIA 2025). That decision sets forth a categorical rule that "a particular social group defined by the alien's sex or sex and nationality, standing alone, is overbroad and insufficiently particular to be cognizable under the INA." *Id.* at 151. Applying that rule, the Board specifically rejected the petitioner's proposed PSG of "Salvadoran women." *Id.* at 154. In response, Cristales-de Linares dedicates a significant portion of her reply brief arguing that we should disregard *Matter of K-E-S-G-* because "[t]he Board's application of the particularity requirement" is "not the best reading of the statute." Reply Br. 4; *see generally Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (overruling *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). But our decision today is not born out of deference to *Matter of K-E-S-G-*, which came after the Board's analysis on review here. It reflects that our precedent independently supports the conclusion that the group "Salvadoran women" is not a cognizable PSG.

\* \* \*

In sum, Cristales-de Linares cannot identify a legally cognizable PSG in which she has membership. So her requests for asylum and withholding of removal cannot succeed.

C

After rejecting Cristales-de Linares's proposed PSGs, the Board identified a second reason why her application cannot succeed: She failed to show that internal relocation within El Salvador would be unreasonable. The Board's conclusion provides an independent basis for rejecting Cristales-de Linares's asylum and withholding-of-removal claims.

As mentioned, an applicant cannot qualify for either asylum or withholding of removal if she can avoid persecution by relocating within her home country. 8 C.F.R. §§ 1208.13(b)(2)(ii), 1208.16(b)(1)(i)(B), (b)(2); *see Lin v. Garland*, 81 F.4th 629, 635 (6th Cir. 2023). Generally, relocation is presumed reasonable, and applicants must rebut that presumption. *See* 8 C.F.R. § 1208.13(a), (b)(2)(ii). In two scenarios, though, the burden shifts to the Government to show relocation is reasonable: if an applicant (i) establishes past persecution on account of a protected characteristic or (ii) fears future persecution, on account of a protected characteristic, at the hands of the home-country government or a government-sponsored actor. 8 C.F.R. § 1208.13(b)(3); *Ghanim v. Holder*, 425 F. App'x 463, 467-68 (6th Cir. 2011).

*Exhaustion*. Cristales-de Linares first faults the Board's approach to the burden of proof. She posits that the IJ and the Board failed to articulate any finding on past persecution. From there, she says that because she *did* experience past persecution, the burden should have shifted to the Government to prove that relocation would not be reasonable. She claims that the Board thus erred by requiring her to disprove the reasonableness of internal relocation.[4]

Cristales-de Linares's burden-shifting arguments are not properly before this Court. The statute authorizing judicial review allows us to review a final order of removal only when "the

---

[4]A district court preliminarily enjoined a 2020 amendment that would have altered that burden-shifting rule. *See Pangea Leg. Servs. v. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 977 (N.D. Cal. 2021) (enjoining 85 Fed. Reg. 80274 (Dec. 11, 2020)). Cristales-de Linares suggests that the Board might have applied the enjoined rule. Cristales-de Linares Br. 36. But she concedes that the Board cited the proper regulation, *id.*, and we see no evidence that the now-enjoined regulation played a role in the Board's analysis.

alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). That is a "mandatory" claim-processing rule we "must enforce" when one of the parties "properly raises it." *Mazariegos-Rodas*, 122 F.4th at 664 (citation omitted). The Government has done so here. Once the Government contends that an issue is unexhausted, we may only consider that issue if it was "reasonably developed in the petitioner's brief to the [Board]." *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009).

Here, Cristales-de Linares's brief to the Board never mentioned the IJ's allegedly deficient finding on past persecution. Nor did it argue that the IJ's analysis required shifting the internal-relocation burden to the Government. And while her brief asserted that she suffered "past persecution," she made no effort to link her contention with the burden-shifting framework. A.R. 30, 35, 42, 47. That is insufficient to preserve the issue for our review. *Khalili*, 557 F.3d at 433.

*Substantial Evidence.* Cristales-de Linares next challenges the merits of the Board's internal-relocation determination. She claims that she cannot relocate within El Salvador because of widespread gang violence, police corruption, and endemic violence against women. The Board considered those conditions. But it affirmed the IJ's finding that Cristales-de Linares had not established that relocation would be unreasonable. We review that finding under the "highly deferential substantial evidence standard." *Hernandez-Hernandez v. Garland*, 15 F.4th 685, 687 (6th Cir. 2021). Under that standard, Cristales-de Linares must identify evidence that "not only supports a contrary conclusion, but indeed *compels* it." *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)).

Before the Board, Cristales-de Linares argued that organized-gang violence and gender-based violence exists in El Salvador. But she did not establish which gang her extortionists belong to—if any. Her only evidence that they belonged to a gang was speculation stemming from "how they looked" and their references to a "boss." A.R. 139. Nor did Cristales-de Linares offer any evidence to suggest that her extortionists have either the means or desire to track her down if she relocates. If anything, Cristales-de Linares's testimony undercuts her fear of gender-based violence. She told the IJ that neither she nor her daughters have ever been physically harmed in El Salvador, and that her mother and sisters continue to safely reside there

and have never been threatened or harmed.  None of that evidence compels us to upset the agency's factual determination under substantial-evidence review.  *See Ouda*, 324 F.3d at 451.

In short, even if Cristales-de Linares identified a cognizable PSG, the Board's internal-relocation conclusion independently forecloses her asylum and withholding-of-removal claims.

D

Cristales-de Linares raises two ancillary issues related to her asylum and withholding-of-removal claims.  We consider and reject each in turn.

*Notices to Appear*.  In a footnote, Cristales-de Linares characterizes the Notices to Appear for her and her daughters' removal hearings as "defective."  Cristales-de Linares Br. 6-7, n.1.  That "perfunctory" statement cannot preserve any notice-based challenge to the validity of the removal proceedings, *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 947 (6th Cir. 2022), which would fail in any event, *see Ramos Rafael v. Garland*, 15 F.4th 797, 800-01 (6th Cir. 2021).

*Humanitarian Asylum*.  Next, Cristales-de Linares believes the agency should have considered whether she qualifies for humanitarian asylum—even though she never sought that form of relief—and asks us to remand for that purpose.  That argument misunderstands our caselaw.  Humanitarian asylum is a discretionary form of relief only available to applicants who prove past persecution.  *K.H. v. Barr*, 920 F.3d 470, 479 (6th Cir. 2019); 8 C.F.R. § 1208.13(b)(1)(iii).  We have therefore held that petitioners who raise a past-persecution claim before an IJ with no mention of humanitarian asylum can still request humanitarian asylum before the Board.  *Juan Antonio*, 959 F.3d at 798.  We have also directed the Board to reconsider an alien's prior request for humanitarian asylum when its past-persecution analysis was flawed.  *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 851 (6th Cir. 2023).  In each of those cases, however, the applicant specifically requested humanitarian asylum before the Board.  *See Juan Antonio*, 959 F.3d at 798; *Sebastian-Sebastian*, 87 F.4th at 851.  Cristales-de Linares did not do so, meaning the Board had no obligation to consider her eligibility.  Nor, per exhaustion principles, may she newly request such relief from this Court.  *Mazariegos-Rodas*, 122 F.4th at 664.

IV

Finally, Cristales-de Linares claims that she is entitled to CAT relief. An applicant seeking CAT protection must "establish that it is more likely than not that he or she would be tortured" upon removal. 8 C.F.R. § 1208.16(c)(2). Such torture must be at the hands of a public official, "or with the consent or acquiescence of, a public official acting in an official capacity." *Id.* § 1208.18(a)(1). Cristales-de Linares asserts an acquiescence-based CAT claim, so she must "demonstrat[e] a likelihood that public officials, aware of the risk of torture, would shirk their duties to intervene and prevent such activity." *Patel v. Bondi*, 131 F.4th 377, 382 (6th Cir. 2025).

Cristales-de Linares maintains that she "will be tortured because Salvadoran government officials turn a blind eye to violence against women." Cristales-de Linares Br. 41. To address the acquiescence requirement, she asserts that "Salvadoran officials have demonstrated an unwillingness and inability" to protect citizens from gang violence. *Id.* The Board considered Cristales-de Linares's evidence, comprising country-conditions reports on gangs and violence against women, and concluded that it failed to show that "she faces an individualized risk of torture." A.R. 5.

Substantial evidence—much of which also bears on internal relocation—supports the Board's decision. *Supra* pp. 14-15. Cristales-de Linares admitted that she and female members of her family have never been harmed in El Salvador and continue to live there safely. As for acquiescence, the only potential persecutors she alludes to are gangs in El Salvador. Yet she never reported her allegedly gang-driven extortion troubles to Salvadoran authorities (she instead raised them informally with a local police-officer friend in another town), so the Salvadoran government "never had a chance to acquiesce." *Sabastian-Andres*, 96 F.4th at 932 (citation omitted). And her claim that the Salvadoran government may acquiesce in the future rests solely on country-condition reports documenting general gang violence in El Salvador. But speculation "[t]hat the Salvadoran government is unable to control the gangs does not constitute acquiescence." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 502 (6th Cir. 2015).

Outside of her own conclusory statements and the country-conditions reports, Cristales-de Linares cites nothing to support that she would likely be tortured in El Salvador or that the Salvadoran government would acquiesce to such torture. Considering the record, we are not compelled to disagree with the Board's resolution of her CAT claim. *See Sebastian-Sebastian*, 87 F.4th at 853.

\* \* \*

We deny the petition for review.